James **UPTERGROVE**, Representative for **GEORGIA UPTERGROVE**, Deceased, Respondent,

v.

**HOUSING AUTHORITY OF THE CITY OF LAWSON, Mo., Appellant.**

**No. WD 52098.**

Missouri Court of Appeals, Western District.

Oct. 15, 1996.

As Modified Nov. 26, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 26, 1996.

Application to Transfer Denied Jan. 21, 1997.

Timothy H. Bosler, Kansas City, for respondent.

J. Patrick Chassaing, Clayton, for appellant.

Before ULRICH, C.J., P.J., SPINDEN and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

This is an appeal from a judgment awarding damages to respondent for the tort claim he brought on behalf of the deceased plaintiff, Georgia Uptergrove, as a result of the injuries she suffered from a fall on the ice and snow. Mrs. Uptergrove died during the

trial. Appellant, the Housing Authority of the City of Lawson, asserts three points on appeal: 1) the trial court erred in failing to grant appellant's motion for directed verdict and motion for a judgment notwithstanding the verdict or in the alternative for a new trial on the issue of negligence, as sovereign immunity should have applied; 2) the trial court erred in allowing respondent to introduce inadmissible hearsay evidence under the "present sense impression" and "statements pursuant to treatment exceptions"; and, 3) the trial court erred by allowing appellant to ask the "insurance question" on voir dire.

## FACTS

Georgia Uptergrove, hereinafter Mrs. Uptergrove, was a resident of public housing provided by the appellant, a municipal corporation, through the city of Lawson, Missouri. Her lease agreement did not specifically mention snow removal, although it did recognize a general obligation to maintain the premises in a safe condition. On February 4, 1990, Mrs. Uptergrove fell on the ice and snow that had accumulated on the sidewalk near the front of her apartment. After paramedics treated her, Mrs. Uptergrove told her son, respondent, that she had slipped and fallen, a statement that respondent testified to at trial over the appellant's objection. The trial court admitted the statement under the "present tense" [sic] exception to hearsay. The court also admitted a statement to the same effect, which Mrs. Uptergrove gave to her doctor, as a statement pursuant to medical treatment. The appellant objected to the admission of this statement as well.

Following hip and leg surgery and a period of convalescence, Mrs. Uptergrove lived in her apartment briefly before moving to a nursing home. She filed suit for tort and contract claims against the respondent on October 15, 1991, and died on December 26, 1992. Respondent, her personal representative, filed a motion for substitution and substituted himself as the plaintiff. In voir dire, respondent's counsel questioned whether panel members or their families were employed by or had a financial interest in appellant's insurer, Missouri Housing Authority Property and Casualty Insurance, Inc. The appellant objected to this inquiry as being prejudicial and irrelevant. At the close of respondent's case, the trial court sustained the appellant's motion for directed verdict concerning respondent's contract claim, but overruled the appellant's motions as to the tort claim. The jury found for appellant and assessed fault to both parties. The respondent then filed a motion for judgment notwithstanding the verdict and motion for new trial in the alternative, which the trial court denied. The respondent now appeals the trial court's judgment on those motions.

## I.

In Point I, the appellant contends that the trial court erred by denying its motion for directed verdict on the issue of its liability, and argues that respondent failed to make a submissible case, because sovereign immunity attaches and is not waived under any exception to the sovereign immunity statute, § 537.600. Specifically, the appellant denies the application of the "dangerous condition" exception to sovereign immunity, as the appellant contends that the exception will only arise if there is an "intrinsic" defect in the property. It argues that the accumulation of snow and ice is not the equivalent of a defect in the property, so sovereign immunity is not waived under the exception. We disagree.

In reviewing the failure to grant a motion for directed verdict at the close of plaintiff's evidence, an appellate court will examine the evidence "... to determine whether or not the plaintiff introduced substantial evidence that tends to prove the facts essential to plaintiff's recovery." *Schaffer v. Bess,* 822 S.W.2d 871, 876 (Mo.App.1991), citing *Eichelberger v. Barnes Hosp.,* 655 S.W.2d 699, 704 (Mo.App.1983). The appellate court will not find reversible error if the plaintiff has submitted such substantial evidence. The reviewing court's determination is made by disregarding the evidence submitted by the defendant and viewing the remaining evidence in the light most favorable to the plaintiff. *Id.* The standard for review of a judgment NOV is essentially the same as we use in reviewing the denial of a motion for directed verdict. For both, the ultimate is-

sue is the submissibility of the case, wherein " '. . . each and every fact essential to liability is predicated upon legal and substantial evidence.' " *Washington by Washington v. Barnes Hosp.*, 897 S.W.2d 611, 615 (Mo. banc 1995), citing *Houghton v. Atchison, Topeka and Santa Fe Railroad Co.*, 446 S.W.2d 406 (Mo. banc 1969). A trial court must not withdraw the case from the jury " '. . . unless there is no room for reasonable minds to differ.' " *Id.*, citing *Gregory v. Robinson*, 338 S.W.2d 88, 91 (Mo. banc 1960). Again, the reviewing court must look only at the evidence presented by the prevailing party in the light most favorable to him to decide if the non-moving party made a submissible case. *Id.* Denial of motion for a new trial is reviewed for abuse of discretion. *Kansas City v. Keene Corp.*, 855 S.W.2d 360 (Mo. banc 1993).

▋ Logically, we must first address respondent's argument that sovereign immunity does not apply here because it did not apply to housing authorities prior to September 12, 1977, and that § 537.600 by its terms only reinstated sovereign immunity protection as it existed prior to September 12, 1977. The legislature reinstated sovereign immunity in 1987 by enacting § 537.600,[1] after the Missouri Supreme Court abrogated the doctrine in *Jones v. State Highway Comm'n*, 557 S.W.2d 225 (Mo. banc 1977). Section 537.600 provides as follows:

1. Such sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect prior to that date, shall remain in full force and effect; except that, the immunity of the public entity from liability and suit for compensatory damages for negligent acts or omissions is hereby expressly waived in the following instances:

(1) Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles or motorized vehicles within the course of their employment;

(2) Injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition. In any action under this subdivision wherein a plaintiff alleges that he was damaged by the negligent, defective or dangerous design of a highway or road, which was designed and constructed prior to September 12, 1977, the public entity shall be entitled to a defense which shall be a complete bar to recovery whenever the public entity can prove by a preponderance of the evidence that the alleged negligent, defective, or dangerous design reasonably complied with highway and road design standards generally accepted at the time the road or highway was designed and constructed.

2. The express waiver of sovereign immunity in the instances specified in subdivisions (1) and (2) of subsection 1 of this section are absolute waivers of sovereign immunity in all cases within such situations whether or not the public entity was functioning in a governmental or proprietary capacity and whether or not the public entity is covered by a liability insurance for tort.

§ 537.600. Thus, the extent of immunity available for governmental bodies prior to September 12, 1977, was neither expanded nor contracted by the statute. *Id.* Therefore, respondent is correct in his assertion that if sovereign immunity did not apply to housing authorities before September 12, 1977, it will not apply now. Thus, the first issue for us to decide is whether sovereign immunity applied to housing authorities prior to September 12, 1977.

---

1. All statutory references are to RSMo 1994, unless otherwise noted.

Respondent correctly states that our courts have generally held that sovereign immunity will not shield **municipalities** from liability for injuries due to failure to keep sidewalks in a reasonably safe condition. However, we find that respondent's argument is misplaced as to **housing authorities**. The Missouri Supreme Court has held that both under § 537.600 and common law, housing authorities exercise only governmental functions and, as such, are immune from tort liability because of their designation as municipal corporations pursuant to § 99.080 RSMo 1989.[2] *State ex rel St. Louis Housing v. Gaertner*, 695 S.W.2d 460 (Mo. banc.1985), *citing Page v. Metro. St. Louis Sewer Dist.*, 377 S.W.2d 348 (Mo.1964); *See Tyler v. Housing Auth. of Kansas City*, 781 S.W.2d 110, 112 (Mo.App.1989); § 537.600. Therefore, we find a housing authority, such as appellant, is fully protected by sovereign immunity, absent the application of one of the exceptions to sovereign immunity found in § 537.600. We next address whether an exception to § 537.600 applies to the facts of this case, thereby exposing appellant to liability.

██ Section 537.600 provides for two exceptions to the sovereign immunity doctrine: 1) the "motor vehicle exception"; and 2) the "dangerous condition exception". § 537.600.1(1), (2). The parties agree that the motor vehicle exception does not apply here. However, the appellant argues in opposition to the respondent that neither does the dangerous condition exception. We hold that the dangerous condition exception applies.

In *Kanagawa v. State By and Through Freeman*, 685 S.W.2d 831, 835 (Mo. banc 1985), the Missouri Supreme Court held that a plaintiff seeking to state a claim under the dangerous condition exception must allege facts that demonstrate:

(1) a dangerous condition of the property; (2) that the plaintiff's injuries directly resulted from the dangerous condition; (3) that the dangerous condition created a reasonably foreseeable risk of harm of the

kind the plaintiff incurred; and (4) that a public employee negligently created the condition or that the public entity had actual or constructive notice of the dangerous condition.

See § 537.600; *Alexander v. State*, 756 S.W.2d 539, 541 (Mo. banc 1988). Appellant directs its claim solely to the first requirement of *Kanagawa*—the issue of whether the alleged accumulation of snow and ice constituted a dangerous condition on the property of appellant. It argues that as a matter of law that this is not a dangerous condition that would waive sovereign immunity protection.

In interpreting the meaning of "dangerous condition" as used in § 537.600.1(2), our courts initially gave it a very narrow construction. In *Twente v. Ellis Fischel State Cancer Hosp.*, 665 S.W.2d 2, 12 (Mo.App. 1983), the court held that

the term "dangerous condition," as that term is expressed and otherwise used in conjunction with § 537.600(2), RSMo 1978 relative to the doctrine of sovereign immunity as a defense by public entities, is a term with a very limited and narrow meaning, thus providing further that the term "dangerous condition" shall be understood and its application limited to describe, define, explain, denote, or reference only and exclusively the physical defects in, upon and/or attending to the property of a public entity.

*See Kanagawa*, 685 S.W.2d at 835. Likewise, in *Stevenson v. City of St. Louis School D.*, 820 S.W.2d 609, 612 (Mo.App.1991), the court held that

[o]ur Missouri Supreme Court has held that the legislature sought to narrowly delimit the scope of § 537.600.1(2). *Bartley [v. Special School Dist. of St. Louis County]*, 649 S.W.2d [864,] 868 [(Mo.1983)]. 'It would violate both this manifest legislative purpose and our policy of strictly construing [the] provision waiving sovereign immunity to hold that 'a dangerous condition' refers to a condition other than a defect in

**2.** "An authority shall constitute a municipal corporation, exercising public and essential governmental functions, and having all the powers necessary or convenient to carry out and effectuate the purposes and provisions of sections 99.010 to 99.230 . . . ." § 99.080 RSMo 1989.

the physical condition of public property.' *Kanagawa,* 685 S.W.2d at 835.

However, as respondent correctly points out, our courts have now extended the definition of "dangerous condition" to include "physical deficiencies" in the property. *See Alexander,* 756 S.W.2d at 541; *Jones v. St. Louis Housing Auth.,* 726 S.W.2d 766, 774 (Mo. App.1987).

In *Jones,* the housing authority was held liable for an injury that resulted from thrown debris while the property was being mowed. The court in *Jones* held that by allowing the debris to accumulate, the

> Housing Authority thereby permitted the ***physical deficiency*** in the grounds and consequently created a "dangerous condition." This physical deficiency would be no different than a situation in which the Housing Authority would dig a trench and leave it unattended without barriers or warnings and consequently someone would injure themselves in that trench.

*Jones,* 726 S.W.2d at 774 (emphasis added). In *Alexander,* the alleged dangerous condition consisted of a folding room partition that was propped against the bottom of a ladder. There, our Supreme Court, citing favorably to *Jones,* held that

> [w]hile it has also been held that "dangerous condition" refers only to defects in the physical condition of public property . . . we believe, given the words of the statute their plain and ordinary meaning, that the alleged placement of the partition against the ladder created a ***physical deficiency*** in the state's property which constituted a 'dangerous condition.'

*Alexander,* 756 S.W.2d at 541–42 (citation omitted) (emphasis added). Thus, our Supreme Court has interpreted "dangerous condition" to include a "physical deficiency" in the property.

While appellant acknowledges the holding in *Jones* that the accumulation of debris constitutes a dangerous condition, it argues that the accumulation of snow and ice is a natural occurrence and, as such, should not be treated as a defect or deficiency in its property. Appellant in essence is arguing that as a matter of law a natural occurrence can never

be found to be a dangerous condition. We disagree.

In support of its argument, appellant cites us to *Herzog v. City of St. Louis,* 792 S.W.2d 39, 40 (Mo.App.1990), which held that a failure to warn of a "hard by" curve in a road next to a naturally occurring lake in a city park did not constitute maintenance of a dangerous condition. *Herzog* does not stand for the proposition cited by appellant. *Herzog* is a fact specific holding affirming a grant of a motion to dismiss for failure to state a cause of action that does not expressly or impliedly hold that a natural occurrence could not under proper circumstances contribute to the creation of a dangerous condition. Appellant cites no other authority for this proposition.

For the purpose of determining the existence of a dangerous condition under § 537.600.1(2), which is the first requirement under *Kanagawa,* we refuse to distinguish between the accumulation of substances and objects that occur naturally and those that do not. This consideration should logically be addressed in determining the third requirement of *Kanagawa*—that the dangerous condition created a reasonably foreseeable risk of harm of the kind the plaintiff incurred; in determining the fourth requirement of *Kanagawa*—that the public entity had actual or constructive notice of the dangerous condition; or in determining whether the public entity was at fault for breaching a duty owed by it to the plaintiff. Although appellant does not in its appeal expressly contend that the third and fourth requirements of *Kanagawa* are not met, or that a duty from it to Mrs. Uptergrove to remove snow and ice did not exist, we will gratuitously and briefly address those issues.

Preliminarily, it is necessary to point out that a determination of "fault" should not be confused with a determination of waiver of "liability" under one of the two exceptions of § 537.600. If fault on the part of the public entity is not found, it is unnecessary to determine whether the public entity can be held liable because it waived its sovereign immunity under one of the two exceptions of § 537.600. For example, in this case, if appellant had not breached a duty owed to

respondent, then no fault would have been found and no liability analysis would have been required under § 537.600 to determine whether appellant had waived its sovereign immunity under the dangerous condition exception.

■ As to a reasonably foreseeable risk of harm, the evidence was substantial from which a reasonable juror could infer that the appellant knew or should have known that an accumulation of ice and snow presented a risk of Mrs. Uptergrove, or any other tenant of her age and physical attributes, slipping and falling on the sidewalk as the jury found in its verdict. As to actual or constructive notice, there was substantial evidence from which a reasonable juror could infer that significant snow and ice fell on the Housing Authority premises and in the surrounding area on the day before the fall and that the person who had been responsible for snow and ice removal for appellant for some time lived in the surrounding area and by his own admission would have been aware of the accumulation of snow and ice on the authority's premises. Such evidence constitutes substantial evidence of constructive or actual notice to appellant of the dangerous condition.

■ As to a duty owed by appellant to Mrs. Uptergrove to remove the snow and ice, we recognize that this state follows the "Massachusetts rule", under which a landlord has no duty to a tenant to remove snow and ice that accumulates naturally and is a condition general to the community. *Alexander v. American Lodging, Inc.,* 786 S.W.2d 599, 601 (Mo.App.1990); *Maschoff v. Koedding,* 439 S.W.2d 234, 236 (Mo.App.1969).

> "The reason advanced in justification of that rule is that to impose the duty of removal would subject the landlord to an unreasonable burden of vigilance and care, a reason similar to that given for denying recovery where one seeks to hold a municipality liable for injuries caused by a natural accumulation of snow or ice on a sidewalk and the condition is general to the community. *Walsh v. City of St. Louis,* 346 Mo. 571, 142 S.W.2d 465."

*Maschoff,* 439 S.W.2d at 236. "An exception to the Massachusetts rule arises where a landlord obligates himself either by agreement or a course of conduct over a period of time to remove snow and ice from common areas, thereby assuming a duty to exercise ordinary care to remove the snow and ice to make the common area reasonably safe." *Alexander,* 786 S.W.2d at 601. We find that appellant, pursuant to its lease with Mrs. Uptergrove, expressly contracted to keep common areas, including the walkway where she fell, in a safe condition, which would include the removal of snow and ice. Thus, appellant had a duty to Mrs. Uptergrove to use ordinary care to remove an accumulation of snow and ice from the walkway.

■ The lease in question provides in pertinent part that "[t]he [appellant's] obligations are as follows: (1) To maintain the premises and the project in decent, *safe* and sanitary *condition* ... (4) To keep project buildings, facilities and common areas, not otherwise assigned to the tenant for maintenance and upkeep in a clean and *safe condition* ..." The phrase "safe condition" is not defined in the lease. Therefore, we will give the words their ordinary and usual meaning. *Washington Univ. v. Royal Crown Bottling,* 801 S.W.2d 458, 465 (Mo.App.1990). Giving the words "safe condition" their ordinary and usual meaning, we find that the lease requiring appellant to keep the common areas of the housing project in a safe condition included the removal of snow and ice. Buttressing this is the fact appellant made it a practice to remove snow and ice from the sidewalk on which Mrs. Uptergrove slipped and fell. As to breach of this duty, the evidence is substantial from which a reasonable juror could infer a breach.

Appellant, as its last line of defense, argues that because municipalities under the common law and prior to the enactment of § 537.600 were not liable for injuries arising from the accumulation of snow and ice, unless the site of accumulation was a special, or isolated condition, unlike the conditions in the rest of the general area, that it could not be liable in this instance absent evidence establishing this fact. As authority for its

argument, appellant cites *Walsh v. City of St. Louis,* 346 Mo. 571, 142 S.W.2d 465, 466–67 (1940) and *Gudorp v. City of St. Louis,* 372 S.W.2d 483, 486–87 (Mo.App.1963). The holdings in these cases are not controlling in that they dealt with the issue of whether the municipality had a duty to remove the snow and ice. In this case, as discussed *supra,* a duty exists pursuant to a written lease which is separate and apart from the existence of any general duty of a municipality to remove snow and ice from sidewalks, regardless of whether it was a condition general to the area. *Alexander,* 786 S.W.2d at 601–02.

Viewing the evidence in a light most favorable to respondent, we find that the appellant has not met its burden on appeal to show that either a motion for a directed verdict, judgment NOV or motion for new trial were improperly denied. We hold that the appellant's failure to keep the authority premises free of snow and ice under the facts and circumstances of this case created a "dangerous condition" under § 537.600.1(2), thereby waiving sovereign immunity protection.

Point denied.

## II.

■ The appellant next claims that the trial court erred in allowing respondent to admit inadmissible hearsay concerning statements Mrs. Uptergrove made about the injuries she suffered. The trial court allowed the admission of Dr. Theodore Baldwin's medical report concerning Mrs. Uptergrove's description to him of her fall on the ice, as well as respondent's statement that Mrs. Uptergrove gave him to the same effect. Appellant argues that Mrs. Uptergrove's statements to respondent and her doctor do not properly fall under the exceptions of present sense impression and testimony for purposes of medical diagnosis, upon which the trial court relied.

■ At the close of appellant's evidence, appellant's attorney read a portion of Mrs. Uptergrove's medical records into evidence, which included her statement to the doctor that she had fallen on the ice: " '[p]atient seen initially this afternoon, was alert and orientated and cooperative. Stated she

slipped and fell on the ice getting her mail.' " Tr. 533. In doing so, appellant waived its right to challenge the admissibility of the testimony. Introducing or eliciting evidence at trial that is similar to that which is challenged on hearsay grounds qualifies as a waiver. *In re Marriage of Clark,* 801 S.W.2d 496, 499 (Mo.App.1990). Consequently, appellant cannot now object to the similar statements that respondent had previously introduced during the trial.

■ In addition, appellant failed to object to the respondent's introduction of similar statements found in Mrs. Uptergrove's deposition, which respondent's attorney read into evidence as follows:

Q. Do you remember what caused you to fall and break your hip?

A. Well, it was slipping on the ice, wasn't it.

Q. Was there ice on the sidewalk when you slipped?

A. Must've been.

Tr. 404. Thus, the fact that Mrs. Uptergrove slipped and fell on the ice was already in evidence. The testimony appellant now objects to on hearsay grounds is cumulative, and therefore not prejudicial. Hearsay evidence will only result in reversal of the trial court if the appellant, who has the burden on the issue, is prejudiced. *State v. Davison,* 920 S.W.2d 607, 609 (Mo.App.1996), citing *State v. McMillin,* 783 S.W.2d 82, 98 (Mo. banc), *cert. denied,* 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990). The trial court did not commit reversible error by admitting the testimony of respondent and the doctor.

Point denied.

## III.

■ In Point III, the appellant asserts that the trial court erred in allowing respondent to question the jury panel members in voir dire concerning their financial interest in the appellant's insurance company. In that regard, respondent's attorney asked the jury panel the following "insurance question": " 'Are any of you or members of your immediate family employed by or have any medical, or financial interest in the Missouri Housing Authorities Property & Casualty Insurance, Inc.?' "

The Supreme Court has ruled that when properly submitted, the trial court must allow plaintiffs to ask the "insurance question" as a matter of law. *Ivy v. Hawk*, 878 S.W.2d 442, 445 (Mo. banc 1994), citing *Carothers v. Montgomery Ward & Co.*, 745 S.W.2d 170, 172 (Mo.App.1987). The appellant does not dispute that respondent submitted the question according to the guidelines set out in *Ivy*. Rather, it argues that the respondent should not be allowed to ask the "insurance question," based on an exception to the *Ivy* rule, which states that there may be some circumstances where ". . . there [is] no possibility that a member of the panel or his family could be a stockholder, officer, director or agent of the insurance company, that questions relating thereto could serve no useful purpose and that such questions could not be asked in good faith." *Id.*, citing *Aiken v. Clary*, 396 S.W.2d 668, 677 (Mo.1965). However, in *Ivy*, the court ultimately rejected challenges to the "insurance question" on this basis because it found that the submitted affidavits and oral representations by counsel did not adequately show lack of financial interest. *Id.* In particular, the court held that affidavits in this context can deny an opportunity for cross examination on the issue. *Id.*

Here, appellant's counsel also made oral representations and submitted an affidavit to show that potential jurors could not have had a financial interest in the Missouri Housing Authorities Property & Casualty Insurance, Inc., a not-for-profit-agency. It can be reasonably inferred that here, as in *Ivy*, the trial court found that appellant's affidavit and oral representations were insufficient to prove financial interest. Thus, we hold that the trial court did not err in allowing appellant's attorney to ask the "insurance question."

Point denied.

### CONCLUSION

We affirm the judgment of the trial court.

All concur.