**STATE ex rel. MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Relator,**

**v.**

**Honorable Robert H. DIERKER, Jr., Judge, Circuit Court, St. Louis City,[1] Respondent.**

**No. 79965.**

Supreme Court of Missouri, En Banc.

Jan. 27, 1998.

As Modified on Denial of Rehearing Feb. 24, 1998.

---

1. Substituted as the party respondent in accordance with Rule 52.13(d).

Zachary T. Cartwright, Rich Tiemeyer, Mo. Highway & Transp. Comm'n, Jefferson City, for Relator.

Gerald M. Dunne, Clayton, Tyrone A. Taborn, City Counselor, Stephen J. Kovac, Assoc. City Counselor, St. Louis, for Respondent.

BENTON, Chief Justice.

Plaintiffs below sued the relator Missouri Highway and Transportation Commission for negligently constructing and maintaining an overpass. The respondent circuit court ruled that the Commission was subject to suit under the dangerous-condition-of-property exception in section 537.600.1(2).[2] Because sovereign immunity bars this wrongful death action, the alternative writ in mandamus is made peremptory. *Mo. Const. art. V, sec. 4(1)*.

### I.

Olga Maxiaeva was driving home in the early hours of February 20, 1995, in St. Louis. As she drove under the Clayton Avenue overpass, fifteen-year-old Shawn Twine dropped a twenty-pound chunk of concrete onto Maxiaeva's car, killing her. Shawn Twine later pleaded guilty to the charge of involuntary manslaughter.

Maxiaeva's husband and their daughter brought a wrongful death action against several defendants, including the Commission. In Count I, plaintiffs alleged that the Commission was negligent by constructing an

---

**2.** All statutory references are to RSMo 1994.

inadequate fence, leaving loose pieces of concrete on the overpass, and failing to light it adequately.

The Commission filed a motion for summary judgment, invoking sovereign immunity. Plaintiffs countered that sovereign immunity was waived under section 537.600.1(2), because a dangerous condition of public property caused Maxiaeva's death. The trial court overruled the motion, stating that it could not find as a matter of law that the condition of the overpass "had no connection" to Maxiaeva's death. The trial court ruled that the Commission was not entitled to judgment because "the incident leading to the death of Ms. Maxiaeva would not have been possible absent the physical conditions of the overpass."

## II.

■ The Commission, as an executive department of state government, is a public entity that sovereign immunity shields from suit. *Mo. Const. art. IV, sec. 29; Section 537.600.1; Wilkes v. Missouri Highway and Transp. Comm'n,* 762 S.W.2d 27, 28 (Mo. banc 1988). Sovereign immunity is waived, however, for cases involving injuries caused by a dangerous condition of public property. *Sec. 537.600.1(2).*

■ Where the pleadings show that a defendant is immune from suit as a matter of law, and the trial court refuses to grant summary judgment, a writ of mandamus is appropriate. *State ex rel. Twiehaus v. Adolf,* 706 S.W.2d 443, 444 (Mo. banc 1986); *State ex rel. Missouri Dep't of Agric. v. McHenry,* 687 S.W.2d 178, 181 (Mo. banc 1985). A defendant who is clearly entitled to immunity should not be required to proceed through trial and appeal in order to enforce that protection. *State ex rel. Board of Trustees v. Russell,* 843 S.W.2d 353, 355 (Mo. banc 1992).

■ After a trial court denies a motion for summary judgment based on sovereign immunity, this Court applies the same standard of review as for a final order granting summary judgment. This Court reviews the record de novo in the light most favorable to the party against whom judgment is sought. *See ITT Commercial Fin. Corp. v. Mid–Am.*

*Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). Facts set forth by affidavit or otherwise in support of the motion are taken as true unless contradicted by the non-movant's response to the summary judgment motion. *Id.* The non-movant receives the benefit of all reasonable inferences from the record. *Id.* A defendant may establish a right to judgment by showing facts that negate any one element of the plaintiff's claim. *Id.* at 381; *Tresner v. State Farm Ins. Co.,* 913 S.W.2d 7, 9 (Mo. banc 1995).

■ To state a claim under the dangerous-condition exception, a plaintiff must allege facts that show 1) a dangerous condition of public property, 2) that the injury directly resulted from the dangerous condition, 3) that the dangerous condition created a reasonably foreseeable risk of the kind of harm incurred, and 4) that a public employee negligently created the condition, or the public entity had actual or constructive notice of the condition. *Kanagawa v. State by and through Freeman,* 685 S.W.2d 831, 835 (Mo. banc 1985), citing *section 537.600.1(2).*

■ At issue in this case is the second requirement: "that the injury directly resulted from the dangerous condition." *Section 537.600.1(2).* The phrase "directly resulted from" in section 537.600.1(2) is synonymous with "proximate cause." *Dale v. Edmonds,* 819 S.W.2d 388, 390 (Mo.App.1991), citing *Applebee v. Ross,* 48 S.W.2d 900, 902 (Mo. 1932).

> Proximate cause requires something in addition to a "but for" causation test because the "but for" causation test serves only to exclude items that are not causal in fact; it will include items that are causal in fact but that would be unreasonable to base liability upon because they are too far removed from the ultimate injury or damage.

*Callahan v. Cardinal Glennon Hosp.,* 863 S.W.2d 852, 865 (Mo. banc 1993).

> The practical test of proximate cause is generally considered to be whether the negligence of the defendant is that cause or act of which the injury was the natural and probable consequence.

*Krause v. U.S. Truck Co., Inc.,* 787 S.W.2d 708, 710 (Mo. banc 1990).

The circuit court ruled, in essence, that the condition of the overpass was a "but for" cause of Maxiaeva's death. According to the plaintiffs, the Commission by its negligence armed Twine with a piece of concrete, permitted him to hide in the darkness, and built a fence so low that he could hurl the concrete over it. As the circuit court found, these conditions "had some connection to the incident leading to Ms. Maxiaeva's death."

 Although the conditions of the overpass "had some connection" to her death, Twine intervened to break the chain of causation. "To the extent the damages are surprising, unexpected, or freakish, they may not be the natural and probable consequences of a defendant's actions." *Callahan*, 863 S.W.2d at 865. In this case, the Commission has established that Maxiaeva's death was the direct result of Twine's conduct. Her death was not the direct result of the condition of the overpass, which only "in some remote way presaged the commission" of the crime. *Kanagawa*, 685 S.W.2d at 835. The sovereign immunity statute must be strictly construed. *Richardson v. State Highway and Transp. Comm'n*, 863 S.W.2d 876, 882 (Mo. banc 1993); *Bartley v. Special Sch. Dist. of St. Louis County*, 649 S.W.2d 864, 868 (Mo. banc 1983). It would be unreasonable to subject the Commission to suit for the damages caused by this manslaughter.

The facts of this case parallel those in *Dale by and Through Dale v. Edmonds*, 819 S.W.2d 388 (Mo.App.1991), where sovereign immunity protected a school board from suit for a student's injuries. Another student picked up a piece of broken glass littering the schoolyard and threw it at him. The court held that the injury directly resulted from the child's throwing a piece of glass, not from a defect in public property. *Id.* at 390; *semble, Patterson v. Meramec Valley R–III Sch. Dist.*, 864 S.W.2d 14, 16 (Mo.App.1993).

Here, even assuming that the overpass was in dangerous condition, that condition did not directly cause Maxiaeva's death. Her death was not the natural and probable conse-

quence of the alleged condition of the overpass.

### III.

The Commission is immune from suit as a matter of law and entitled to summary judgment because it negated one element of the plaintiff's claim, causation. The alternative writ of mandamus is made peremptory.

PRICE, LIMBAUGH, ROBERTSON, COVINGTON and HOLSTEIN, JJ., concur.

WHITE, J., dissents in separate opinion filed.

WHITE, Judge, dissenting.

I respectfully dissent. The majority concludes that the condition of the overpass was too remote to Shawn Twine's crime to be a direct cause of Olga Maxiaeva's death. That issue should have been decided by a jury, after both sides had an opportunity to present evidence on causation.

In *Oldaker v. Peters*,[1] a section 537.600 case against the Missouri Highway and Transportation Commission, the court of appeals stated:

> Proximate cause, and hence, a causal connection, are present if the evidence shows the negligence to have been the efficient cause which set in motion the chain of circumstances leading up to the injury.... The negligence of the defendant need not be the sole cause of the injury, as long as it is one of the efficient causes thereof, without which injury would not have resulted.

A public entity can, therefore, on sufficient pleadings, be sued under section 536.600 concurrently with another party at fault. For example, in *Fox v. City of St. Louis*,[2] plaintiff's car was hit by an oncoming car. Although there was evidence of the other driver's negligence, the court of appeals reversed summary judgment entered in favor of the city, as the pleadings sufficiently alleged negligence on the part of the city for the lack of a stop sign. The court stated "[p]roof of

---

**1.** 869 S.W.2d 94, 100 (Mo.App.1993) (affirming jury verdict against Commission even where there was no direct evidence that condition caused injury, but only expert testimony).

**2.** 823 S.W.2d 22 (Mo.App.1991).

negligence concurring with that of [the city] to cause the accident would not defeat [plaintiff's] claim, but would only permit an apportionment of fault." [3] Yet the majority apparently would have concluded on the pleadings that the car that hit the plaintiff completely cut off the city's liability as a matter of law because it was not the lack of a stop sign that collided with the plaintiff's car.

In *Beyerbach v. Girardeau Contractors*,[4] plaintiff, in her vehicle, approached a bridge that was closed to one lane due to construction. She made a complete stop to allow the oncoming traffic to cross and was hit by a car behind her. Notwithstanding evidence of negligence by the other driver, the court of appeals reversed summary judgment in favor of the Commission because the pleadings sufficiently alleged negligence on the part of the Commission for failing to keep both lanes of traffic open and for inadequate and unsafe warning signs. Under the analysis of the majority opinion, the court of appeals erred in reversing summary judgment as even the most generous reading of the plaintiff's allegations would demonstrate that it was not the construction and inadequate warning signs that crashed into the plaintiff's car. While I believe that section 537.600 must be construed strictly, it is just as imperative that it be construed consistently.

The pleadings in the underlying case alleged that the Commission, concurrently with Shawn Twine, directly caused the death of the deceased. In response to the Commission's motion for summary judgment, plaintiffs offered the affidavit of an expert stating that "the condition of the overpass contributed to the incident which resulted in the death of the decedent." Plaintiffs also offered documentation on the insufficiency of the fence used by the Commission in preventing objects being thrown from overhead structures. This was sufficient to survive summary judgment on the causation element.[5]

This case does differ from the above cases in that Twine's eventual guilty plea injects a criminal reckless act into the equation,[6] as opposed to concurrent negligent acts in the traditional sense.[7] It still remains that the test for direct cause is whether the Commission's alleged negligence set into motion the chain of events that caused the injury. The pleadings presented a genuine dispute as to that issue. Since the other three statutory elements were sufficiently pleaded, a jury—and not this Court—should have made the initial determination as to whether Twine's actions were "surprising, unexpected, or freakish"[8] in light of the alleged dangerous condition.

**3.** *Id.* at 24 (citing *Cole v. Missouri Highway and Transp. Com'n*, 770 S.W.2d 296 (Mo.App.1989) (reversing dismissal for failure to state a claim and allowing plaintiff's case involving an automobile collision to go forward against Commission, despite evidence of negligence of other driver, where pleadings sufficiently alleged negligence of Commission for inadequate signs.))

**4.** 868 S.W.2d 163 (Mo.App.1994).

**5.** *See Smith v. Missouri Highway and Transp. Com'n*, 826 S.W.2d 41, 44 (Mo.App.1992) (holding, on direct appeal of jury verdict adverse to the Commission under section 537.600.1(2), that an expert's testimony that "suggested the condition of the intersection contributed to the accident" was sufficient to submit the element of causation to the jury.)

**6.** "A person commits the crime of involuntary manslaughter if [the person] [r]ecklessly causes the death of another person." Section 565.024, RSMo 1994.

**7.** A criminal act by a third party does not automatically bar recovery. "In an action based on fault seeking to recover damages for injury or

death to person or harm to property, *any* contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for an injury attributable to the claimant's contributory fault, *but does not bar recovery*." UNIF. COMPARATIVE FAULT ACT section 1, 12 U.L.A. 127 (1996) (emphasis added). The Commissioners' Comment on this section states "The Act applies to 'acts or omissions that are in any measure negligent *or reckless* toward the person or property ... of others.' This includes the traditional action for negligence but covers all negligent conduct, whether it comes within the traditional negligence action or not. It includes negligence as a matter of law, arising from court decision *or criminal statute*." *Id.* (emphasis added). *See Gustafson v. Benda*, 661 S.W.2d 11, 15, 17 Appendix A (Mo. banc 1983) ("Insofar as possible this and future cases shall apply the doctrine of pure comparative fault in accordance with the Uniform Comparative Fault Act [sections] 1–6 ...").

**8.** *See Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 865 (Mo. banc 1993).

As the pleadings present genuine issues of material fact as to all four elements necessary to maintain suit against a public entity under section 537.600.1(2), I would quash the writ.