Kristi WILLIAMS, et al., Appellants,

v.

MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Respondent.

No. WD 57074.

Missouri Court of Appeals, Western District.

Feb. 1, 2000.

As Modified March 28, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 28, 2000.

Application for Transfer Denied May 30, 2000.

Larry D. Coleman, Kansas City, for appellants.

**1.** In addition to the appellants' claims for personal injuries, Kristi Williams also had a claim for property loss for damage to her 1989 Ford Tempo, which she alleged was a total loss.

James M. Slone, Kansas City, for respondent.

Before: SMART, P.J., and ELLIS and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

Kristi Williams, individually and as next friend for her minor sons, Marcel Williams and Benjamin Mims, appeals from the judgment of the Circuit Court of Jackson County granting summary judgment to the Missouri Highway and Transportation Commission (the MHTC) on the appellants' claims for damages resulting from a motor vehicle accident in Kansas City, Missouri.[1]

In their sole point on appeal, the appellants claim that the trial court erred in granting the MHTC's motion for summary judgment on the basis that their claims were barred by sovereign immunity because genuine issues of material fact existed as to whether the dangerous condition exception of § 537.600[2] applied to waive the sovereign immunity defense of the MHTC so as to allow their claims for damages.

We reverse and remand.

### Facts

At approximately 12:01 a.m. on June 19, 1995, Kristi Williams (Williams) was driving her 1989 Ford Tempo south on Bruce R. Watkins Drive in Kansas City, Jackson County, Missouri. Her two minor sons, Marcel Williams (Marcel) and Benjamin Mims (Benjamin), were passengers in the car. When she neared the intersection at Meyer Boulevard, she noticed that the traffic signals were out in all directions. Upon reaching the intersection, she stopped and, after determining that it was safe to proceed, entered the intersection. As she entered the intersection, another

**2.** All statutory references are to RSMo 1994, unless otherwise indicated.

vehicle, driven by Angela T. Uber (Uber) and traveling west on Meyer Boulevard, struck the driver's side of Williams's car. Uber was uninsured.

As a result of the collision, Williams and her sons were injured and her vehicle was extensively damaged. Williams received injuries to her neck, shoulder, and knee. Marcel sustained injuries to his leg, neck, collarbone, and head, requiring several weeks of hospitalization, and Benjamin suffered a broken nose and multiple abrasions and contusions.

On April 10, 1997, as a result of the accident, Williams, individually and as next friend for her sons, filed suit against the MHTC in the Circuit Court of Jackson County to recover damages for their personal injuries and property loss from the damage to Williams's Ford Tempo. An amended petition was filed on July 22, 1997. The MHTC moved for and on March 5, 1998, was granted leave by the trial court to add Uber as a third-party defendant. The appellants alleged, *inter alia*, in their petition that the sovereign immunity bar to their claims was waived in that the lights-out condition of the traffic signals at the intersection constituted a dangerous condition under § 537.600. The appellants also filed suit against their insurance company, American Standard Insurance Company of Wisconsin, to recover under their uninsured motorist coverage. Their claims under their uninsured motorist coverage were later settled.

On July 23, 1998, the MHTC filed a motion for summary judgment. In its motion, the MHTC alleged, *inter alia*, the following claimed undisputed facts:

4. Plaintiffs have asserted previously that the direct and proximate cause of Plaintiffs' accident and injuries was "the negligent and careless acts of the uninsured motorist (Angela Uber)." See Paragraph 5 of Application for Approval of Compromise Settlement and Authority to Execute Release, signed by Plaintiff Kristi Williams on behalf of Benjamin Mims, attached hereto as Exhibit "C" and incorporated herein by reference, and on behalf of Marcel Williams, attached hereto as Exhibit "D" and incorporated herein by reference.

5. Plaintiffs allege in Paragraph 8 of their Petition for Damages, which allegations MHTC has in its Answer denied, that Plaintiffs' accident and their injuries were proximately caused by the dangerous condition of MHTC property, which dangerous condition was created either by the negligent or wrongful act or omission of an employee of the MHTC within the course and scope of his/her employment or that MHTC had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

6. Contrary to the allegations in Paragraph 8 of Plaintiff's [sic] Petition for Damages, and assuming arguendo that an intersection becomes a dangerous condition when traffic signal lights go completely out, no act or omission by an MHTC employee within the course and scope of his/her employment created the condition, nor did MHTC, through its employees, have actual or constructive notice of the dangerous condition within sufficient time prior to Plaintiffs' accident and injury to have taken measures to protect against said alleged dangerous condition.

In support of its motion, the MHTC filed the affidavit of Wallace L. Shelton, who, at the time of his affidavit and deposition, was a regional maintenance supervisor for the Missouri Department of Transportation. However, at the time of the accident, he was the signal and lighting supervisor for the district, which included the intersection of the accident.

On September 8, 1998, the appellants filed their response to the MHTC's motion for summary judgment in which they alleged, *inter alia*, that Shelton's deposition testimony supported a finding that the material facts on which the MHTC relied for

summary judgment were in dispute so as to defeat the MHTC's motion. On February 10, 1999, the MHTC filed a voluntary dismissal as to the third-party defendant, Uber. On March 11, 1999, the trial court granted the MHTC's motion for summary judgment.

This appeal follows.

### Standard of Review

Our review is essentially *de novo.* The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. *banc* 1993) (citations omitted). Summary judgment will be upheld on appeal if: (1) there is no genuine dispute of material fact, and (2) the movant is entitled to judgment as a matter of law. *Id.* at 380.

When considering appeals from summary judgments, the [c]ourt will review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record.

*Id.* at 376 (citations omitted).

### I.

In their sole point on appeal, the appellants claim that the trial court erred in granting the MHTC's motion for summary judgment on the basis that their claims were barred by sovereign immunity be-cause genuine issues of material fact existed as to whether the dangerous condition exception of § 537.600 applied to waive the sovereign immunity defense of the MHTC so as to allow the appellants' claims for damages. We agree.

■ The doctrine of sovereign immunity protects public entities, such as the MHTC, from liability for negligent acts. § 537.600; *Fantasma v. Kansas City, Mo., Bd. of Police Comm'rs,* 913 S.W.2d 388, 391 (Mo.App.1996). The doctrine was abrogated by the Missouri Supreme Court in *Jones v. State Highway Commission,* 557 S.W.2d 225, 230 (Mo. *banc* 1977), but was reinstated by the legislature in 1987 by its enactment of § 537.600. *Uptergrove v. Housing Auth.,* 935 S.W.2d 649, 652 (Mo. App.1996). Section 537.600 provides, in pertinent part, as follows:

1. Such sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect prior to that date, shall remain in full force and effect; except that, the immunity of the public entity from liability and suit for compensatory damages for negligent acts or omissions is hereby expressly waived in the following instances:

(1) Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles or motorized vehicles within the course of their employment;

(2) Injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public

entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

This statute provides two exceptions to the sovereign immunity doctrine: (1) the "motor vehicle exception" and (2) the "dangerous condition exception." *Uptergrove*, 935 S.W.2d at 653. It is the second exception on which the appellants relied to recover against the MHTC.

■ Claiming that the dangerous condition exception of § 537.600 applied so as to waive the sovereign immunity bar to their claims, the appellants alleged in their first-amended petition that a dangerous condition of the MHTC's property existed in that the traffic lights, which controlled the intersection where the accident in question occurred, were out at the time of the accident. For the dangerous condition exception of § 537.600 to apply, the appellants were required to plead and prove not only that (1) there existed a dangerous condition of the MHTC's property, but that (2) the injury directly resulted therefrom; (3) the dangerous condition created a reasonably foreseeable risk of the kind of harm incurred; and (4) a public employee negligently created the condition or had actual or constructive notice of the condition in time to protect against the dangerous condition. § 537.600; *State ex rel. Missouri Highway and Transp. Comm'n v. Dierker*, 961 S.W.2d 58, 60 (Mo. *banc* 1998).

■ Under Rule 74.04,[3] to be entitled to summary judgment, the MHTC was required to show that: (1) no genuine dispute existed as to those material facts upon which it was relying for summary judgment; and (2) based on these undisputed facts, it was entitled to judgment as a matter of law. Rule 74.04; *ITT Commercial Fin. Corp.*, 854 S.W.2d at 380. If

the movant for summary judgment is a defending party, as in the present case, a *prima facie* case for summary judgment may be established by one or more of the following means: (1) showing undisputed facts that negate any one of the claimant's required proof elements; (2) showing that the claimant, after an adequate period of discovery, has not produced and would not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's required proof elements; or (3) showing that there is no genuine dispute as to the existence of each of the facts necessary to support an affirmative defense properly pleaded by the movant. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381. "Regardless of which of these three means is employed by the 'defending party,' each establishes a right to judgment as a matter of law. Where the facts underlying this right to judgment are beyond dispute, summary judgment is proper." *Id.* In its motion for summary judgment, the MHTC, as a defending party, employed both the first and second means for making a *prima facie* case for summary judgment by alleging: (1) facts which it asserted negated the second element of the dangerous condition exception to sovereign immunity; and (2) that the appellants had not and would not be able to produce any evidence to prove the fourth element of the dangerous condition exception. We discuss each of these bases for summary judgment, *infra*.[4]

## A. Second Element – Did the Appellants' Injuries Directly Result from the Lights–Out Condition of the Traffic Signals at the Intersection?

The MHTC claims that on the undisputed facts, as alleged in its motion, the second element of the dangerous condition exception of § 537.600, the "causation element," was negated. Specifically, the

---

3. All rule references are to the Missouri Rules of Civil Procedure (1998), unless otherwise indicated.

4. It should be noted that, although the negation of elements two and four was the basis on which the MHTC relied for summary judgment, it did not concede elements one and three for purposes of trial.

MHTC contends that the lights being out at the intersection was not the direct and proximate cause of the appellants' injuries because the negligence of the uninsured motorist, Uber, intervened to cause the accident and their injuries. Thus, in determining whether the MHTC made a *prima facie* case for summary judgment by negating the causation element of the dangerous condition exception, we must decide whether, on the undisputed material facts, Uber was negligent and, as a result, the alleged dangerous condition of the traffic lights being out was not the direct cause of the injuries claimed by the appellants.

"The phrase 'directly resulted from' in section 537.600.1(2) is synonymous with 'proximate cause.'" *Dierker*, 961 S.W.2d at 60 (*citing Dale By Dale v. Edmonds*, 819 S.W.2d 388, 390 (Mo.App. 1991)).

"Proximate cause requires something in addition to a 'but for' causation test because the 'but for' causation test serves only to exclude items that are not causal in fact; it will include items that are causal in fact but that would be unreasonable to base liability upon because they are too far removed from the ultimate injury or damage."

*Id.* (*quoting Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 865 (Mo. *banc* 1993)). In general, the practical test of proximate cause is "'considered to be whether the negligence of the defendant is that cause or act of which the injury was the natural and probable consequence.'" *Id.* (*quoting Krause v. U.S. Truck Co.*, 787 S.W.2d 708, 710 (Mo. *banc* 1990)). "'To the extent the damages are surprising, unexpected, or freakish, they may not be the natural and probable consequences of a defendant's actions.'" *Id.* at 61 (*quoting Callahan*, 863 S.W.2d at 865). "'[T]he negligence of [the] defendant need not be the sole cause of the injury ... [i]t is sufficient that it be one of the efficient causes thereof, without which the injury would not have resulted.'" *Crane v. Drake*, 961 S.W.2d 897, 902 (Mo.App.1998) (*quoting Patrick v. Alphin*, 825 S.W.2d 11, 13 (Mo.App.1992)). The trier of fact normally decides causation, *Peterson v. Summit Fitness, Inc.*, 920 S.W.2d 928, 936 (Mo.App.1996), especially where reasonable minds could differ as to causation on the facts of the case. *Linton v. Missouri Highway and Transp. Comm'n*, 980 S.W.2d 4, 9 (Mo.App.1998).

The MHTC alleged in its motion that Uber was negligent and her negligence was an intervening cause of the accident resulting in the appellants' injuries because she entered the intersection, which was uncontrolled at the time due to the traffic lights being out, without stopping her vehicle and yielding to Kristi Williams's vehicle, which was already in the intersection.[5] In support of its allegation that Uber's negligence was the direct cause of the appellants' injuries and not the alleged dangerous condition, the MHTC stated in its motion, as an undisputed material fact, that the appellants had "asserted previously that the direct and proximate cause of [appellants'] accident and injuries was 'the negligent and careless acts of the uninsured motorist (Angela Uber).'" As a specific reference in support of this allegation, the MHTC cited "Paragraph 5 of Application for Approval of Compromise Settlement and Authority to Execute Release, signed by Plaintiff Kristi Williams on behalf of Benjamin Mims, ..., and on behalf of Marcel

---

**5.** Uber's alleged negligence was presumably predicated on the intersection being uncontrolled and a violation of § 304.351.1, which provides that the "driver of a vehicle approaching an intersection shall yield the right-of-way to a vehicle which has entered the intersection from a different highway, provided, however, there is no form of traffic control at such intersection." It may have also been predicated on § 304.010.1, which, prior to being amended, effective March 13, 1996, imposed a duty on an operator of a motor vehicle to drive "in a careful and prudent manner and at a rate of speed so as not to endanger the property of another or the life or limb of any person and shall exercise the highest degree of care." *See Crane*, 961 S.W.2d at 901.

Williams," with respect to their claims against Uber.

■ To succeed on its motion for summary judgment on the basis that the causation element of the dangerous condition exception, relied upon by the appellants to recover, was negated, the respondent necessarily was required to rely on an inference that Uber's negligence was the direct and proximate cause of the accident. Even assuming, *arguendo*, that such an inference could be drawn from the alleged undisputed facts, the appellants contend that this inference alone would not be sufficient to negate the causation element of the dangerous condition exception they alleged, so as to entitle the MHTC to summary judgment. This is so, they contend, in that a public entity may be sued, under a waiver of sovereign immunity, concurrently with another party at fault. We agree. *See Linton*, 980 S.W.2d at 7–8; *Oldaker v. Peters*, 869 S.W.2d 94, 100 (Mo. App.1993); *Fox v. City of St. Louis*, 823 S.W.2d 22, 24 (Mo.App.1991); *Cole v. Missouri Highway and Transp. Comm'n*, 770 S.W.2d 296, 298–99 (Mo.App.1989). As stated in *Oldaker*, the "negligence of the defendant need not be the sole cause of the injury, as long as it is one of the efficient causes thereof, without which injury would not have resulted." *Oldaker*, 869 S.W.2d at 100.[6] Thus, even accepting that a causal connection could be established between the negligence of Uber and the accident, rendering her liable to the appellants, this fact would be insufficient, in and of itself, to negate the second element of the dangerous condition exception pled by the ap-

pellants in order to waive the sovereign immunity defense of the MHTC. As such, the MHTC failed to make a *prima facie* case for summary judgment on this basis.

Even though we have determined that summary judgment would not lie for the MHTC with respect to the causation element of the dangerous condition exception, that does not end our inquiry. This is so in that, as discussed, *supra*, the MHTC would have been entitled to summary judgment if any element of the appellants' required proof to recover could not, under the undisputed facts and as a matter of law, be established. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381. As such, we still must determine whether the MHTC was entitled to summary judgment with respect to its allegations as to whether the appellants could establish the fourth element of the dangerous condition exception.

**B. Fourth Element – Did a MHTC Employee Create or Have Actual or Constructive Notice of the Lights–Out Condition of the Traffic Signals at the Intersection?**

■ As discussed, *supra*, in addition to the other three specified elements, the appellants, in order to establish the dangerous condition exception, were also required to plead and prove the fourth element, that a MHTC employee negligently created the alleged dangerous condition or the MHTC had actual or constructive notice of it in time to protect against it. *Dierker*, 961 S.W.2d at 60. This element is found in § 537.600.1(2), which provides, in pertinent part, that:

---

6. In *Donahue v. City of St. Louis*, 758 S.W.2d 50, 52 (Mo. *banc* 1988), the Missouri Supreme Court recognized that the improper maintenance of traffic controls is encompassed by the dangerous condition exception to the defense of sovereign immunity. There, the alleged dangerous condition was a downed stop sign, *id.* at 50, which, in our view, is much like a traffic signal that is out, such as in our case. Relying on *Donahue*, the courts in *Linton*, 980 S.W.2d at 6–7, *Fox*, 823 S.W.2d at 24, *Nagy v. Missouri Highway and Transportation Commission*, 829 S.W.2d 648, 651–52 (Mo.App.1992), *Cole*, 770 S.W.2d at 297–98, and *Wilkes v. Missouri Highway and Transportation Commission*, 762 S.W.2d 27, 28 (Mo. *banc* 1988), held that improper signage could constitute a dangerous condition under § 537.600 to waive sovereign immunity. In light of these decisions and the fact that there was no dispute that the traffic signal lights at the intersection were out at the time of the accident, it could be inferred reasonably that this condition, at the very least, contributed to directly cause the accident.

either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

As to this element, the MHTC employed the second means available to a defending party to make a *prima facie* case for summary judgment by alleging that the appellants, after an adequate period of discovery, had not and would not be able to produce evidence sufficient to allow a jury to find that the MHTC had sufficient notice to protect against the dangerous condition alleged. *ITT Commercial Fin. Corp.,* 854 S.W.2d at 381.

As to the fourth element, in order to establish the dangerous condition exception, it was sufficient for the appellants to show *either* that: (1) the lights-out condition of the traffic lights was created by a MHTC employee; or (2) it had actual or constructive notice of the condition in time to protect against it. *Dierker,* 961 S.W.2d at 60. Thus, in order for the MHTC to make a *prima facie* case for summary judgment on the failure of the appellants to produce evidence to establish the fourth element of the dangerous condition exception, it would have had to plead and show that the appellants could not, on the evidence capable of production, prove that a MHTC employee caused the lights-out condition of the traffic signals or that it had sufficient notice of the condition so as to protect against it. Even assuming, *arguendo,* that it did make a *prima facie* case for summary judgment with respect to the fourth element, we find that the MHTC's motion was still improvidently granted, in that the appellants rebutted it, as discussed, *infra.*

Because the fourth element of the dangerous condition exception of § 537.600 can be satisfied on the two specified alternative bases, it follows then that, if facts existed from which either could be found, the MHTC's motion for summary judgment, predicated on its attack on the fourth element, should have failed, and the trial court erred in granting it on that basis. Thus, even assuming, *arguendo,* that a *prima facie* case for summary judgment was made by the MHTC with respect to the fourth element of the dangerous condition exception, for the reasons discussed, *infra,* we find that summary judgment for the MHTC on that basis was improper in that there were facts in dispute from which it could be reasonably inferred that the lights-out condition of the traffic signals was created by an employee of the MHTC.

Once a *prima facie* case is made for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the party's pleading, but his response, by affidavits or as otherwise provided in this Rule 74.04, shall set forth specific facts showing that there is a genuine issue for trial." Rule 74.04(e). In his or her response, the non-movant, is required "to show—by affidavit, depositions, answers to interrogatories, or admissions on file—that one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed." *ITT Commercial Fin. Corp.,* 854 S.W.2d at 381. If such a showing is not made by the non-movant, judgment is proper for the movant. *Id.* at 382. A "genuine issue" exists where the record contains competent evidence of "two plausible, but contradictory, accounts of the essential facts." *Id.* "A 'genuine issue' is a dispute that is real, not merely argumentative, imaginary or frivolous." *Id.*

To defeat summary judgment for the MHTC based on its allegation that the appellants could not produce evidence to prove the fourth element of the dangerous condition exception, the appellants, in their response, stated that there was evidence from which it could be reasonably inferred that an employee of the MHTC created the lights-out condition of the traffic sig-

nals. In so stating, they relied on the deposition testimony of Shelton, who, at the time of the accident, was employed by the MHTC as a signal and lighting supervisor for the district which included the intersection where the accident occurred. In his deposition, he testified, in pertinent part, that: (1) the traffic lights at the intersection were completely out at the time of the accident; (2) the cause of this condition was that a breaker in the main disconnect box had been manually turned off, causing a loss of power; (3) the disconnect boxes are normally locked, with keys to the locks being in the possession of MHTC employees; and (4) the lock for the disconnect box in question was missing. It could be inferred from Shelton's deposition testimony that an employee of the MHTC unlocked the disconnect box, in the course of his or her employment, and switched off the breaker, without switching it back on, creating the lights-out condition at the intersection. In light of this, summary judgment for the MHTC, with respect to its challenge that the appellants could not establish the fourth element of the dangerous condition exception, was improper.

## Conclusion

The circuit court's summary judgment for the MHTC on the appellants' claims for damages is reversed and the cause is remanded for further proceedings consistent with this opinion.

ELLIS, J., concurs.

SMART, P.J., concurs in separate opinion.

SMART, Presiding Judge, concurring.

Although I concur in the decision to vacate the summary judgment ruling and remand the case for further proceedings, I write separately in order to discuss the concepts of dangerous condition and proximate cause.

The majority opinion might be interpreted as suggesting that a controlled intersection which has lost its signals due to lack of power is necessarily a condition of property which a jury could reasonably find to be a dangerous condition. I submit that the submissibility of the hypothesis of dangerous condition depends upon the facts and circumstances of the case. A controlled intersection which lacks power and is therefore without signals is the equivalent of an uncontrolled intersection. An uncontrolled intersection is not necessarily a dangerous condition. The fact that some other driver may drive carelessly and illegally, thereby colliding with the plaintiff's car is not enough, in itself, to allow plaintiff to demonstrate that a street or an intersection is a dangerous condition of property. Otherwise, every street and every intersection and every roadway would potentially be a dangerous condition of property. In this case, it cannot be stated as a matter of law that this intersection necessarily qualifies as a dangerous condition of property. None of the circumstances are before us by way of stipulation or otherwise. On remand, one of the things the court will consider is whether the circumstances of the intersection make the hypothesis of dangerous condition submissible to the jury.

For a condition to be dangerous within the meaning of § 537.600, more is required than simply the notion that a collision is likely to happen there if someone does not follow the rules. Certainly, a roadway may be negligently designed in such a way as to be dangerous when the condition itself significantly aggravates the common dangers of vehicle operation which would already be present. *Jones v. Highway Comm'n*, 557 S.W.2d 225 (Mo. banc 1977); Linton v. Missouri Hwy. & Transp. Comm'n, 980 S.W.2d 4 (Mo.App.1998). Even a downed stop sign might create a dangerous condition where, for instance, the cross street might be designed without a stop sign or other control and, given other factors such as visibility, the downed stop sign could cause the intersection to be a dangerous condition. See *Donahue v. City of St. Louis*, 758 S.W.2d 50 (Mo. banc

1988) (holding claim of downed stop sign sufficient for pleading purposes). The court in *Logan v. Phillips*, 896 S.W.2d 38 (Mo.App.1994), which was a case that, like this case, involved a power outage to a light controlled intersection, did not address the specific issue of dangerous condition because the defendant in that case was not a municipality but a power company, and because the court there decided that the power outage was not a proximate cause of the collision. However, because of the overlap between the concepts of dangerous condition and proximate cause, the case is worthy of consideration in this context. *Logan* suggests that such an intersection is not necessarily a dangerous condition. We have found no case holding that a claim that a controlled intersection which lacks the power for the operation of its signals is necessarily submissible as claim of a dangerous condition. On remand, the court will examine the facts and circumstances in context, in determining whether the hypothesis that the intersection is a dangerous condition qualifies for submissibility to the jury.

Although I agree that the MHTC did not in this case establish that the negligence of the alleged errant driver was the intervening cause or the sole efficient cause in this case, I also do not think it necessarily can be said that the causation element is submissible. The statute requires not only that there be a dangerous condition of property, but also that plaintiff's injury must have "directly resulted" from the dangerous condition. As already stated, we do not know whether the intersection in this case can qualify as a "dangerous condition," because we do not know all of the facts. Moreover, we do not know whether the failure of the signals to operate was an efficient cause of plaintiff's injuries because we do not know what the evidence will show at trial as to the facts of the collision. In *Logan*, v. *Phillips*, 896 S.W.2d 38 (Mo.App.1994), mentioned briefly above, the vehicle causing the injury entered the uncontrolled intersection out of turn (the other cars were stopping, as at a four-way stop, and crossing alternately) and at an excessive rate of speed for the circumstances. The court held that the lack of functioning signals was not a proximate cause of the collision because the negligence of the other vehicle operator (which happened to be a police officer) was the sole efficient cause of the collision. The lack of power was considered too remote to be considered an efficient cause of the collision.

Although issues of dangerous condition and proximate cause are generally issues for the jury, such issues are sometimes questions of law for the court. *Logan v. Phillips*, 896 S.W.2d 38 (Mo.App.1995); *Linton v. Highway Comm'n*, 980 S.W.2d 4, 9 (Mo.App.1998). Not every allegation of dangerous condition or proximate cause creates an issue for the jury's determination. On remand, the trial court will examine the allegations in the light of the facts and circumstances as to all of the requirements for submission of a claim under § 537.600 RSMo 1994.