**APEX OIL COMPANY, a corporation, Plaintiff-Appellant,**

v.

**Lester BELDNER d/b/a Marvel Fuel Oil Company, Defendant-Respondent.**

No. 37913.

Missouri Court of Appeals, St. Louis District, Division Two.

March 7, 1978.

Motions for Rehearing and/or Transfer Denied June 8, 1978.

Richard H. Ulrich, Ken Heinz, Shifrin, Treiman, Bamburg & Dempsey, St. Louis, for plaintiff-appellant.

Edward Lander, Clayton, for defendant-respondent.

MARSHALL CRAIG, Special Judge.

The appellant, the plaintiff in the trial court, brought its suit for the collection of a fuel oil bill. The jury trial resulted in a verdict for defendant. The appellant bases his appeal only as to those issues relating to Count I of its second amended petition. The pertinent portions of that Count are as follows:

"3. That on or about the 6th day of February, 1971 and the 8th day of February, 1971, plaintiff, at the special instance and request of defendant, sold and delivered to defendant certain fuel oil of the value and for the price of $3,366.46, to be paid by defendant on demand, the type of oil, as well as the dates when the oil was sold, and the prices charged therefor respectively, appear from the following bill of items hereto annexed and marked as Exhibit A and made a part hereof.

4. That the prices charged for said oil are, and were at the time when said goods were sold and delivered, reasonable and proper and the defendant agreed and promised to pay the same, but though often thereto requested to do so, he has failed and refused, and still fails and refuses to pay the same and every part thereof."

The appellant raises two grounds for appeal: (1) The court erred in giving defend-

ant's Instruction No. 5. The grounds stated for this objection were that the instruction violated Rule 70.01 in that, as a converse instruction, it conversed a non-essential element of plaintiff's case and was not in substantially the same language as plaintiff's verdict director and that the giving of this instruction was material and prejudicial to plaintiff in that the jury was thereby erroneously instructed that defendant had to receive all of the four loads of oil before it could recover. (2) The trial court erred in overruling plaintiff's motion to set aside verdict and judgment and to enter judgment in favor of plaintiff in that under the evidence, verdict and judgment should have been directed for plaintiff because from the evidence no reasonable man could believe that defendant received no oil.

We find no error and affirm the judgment of the trial court.

The plaintiff in Count I contends that it "sold and delivered" four tanker loads of fuel oil to defendant on February 6th and 8th, 1971. The value of the oil as alleged in the petition was $3,366.46, and also as set out in Invoice # 140151 which was sent to the defendant on February 11, 1971. The defendant denies that the oil described in the Invoice # 140151 was ever delivered and the invoice was never paid.

A careful search of the record reveals that Apex never produced any direct evidence that any of the four loads of oil, which were described in Invoice # 140151, were actually delivered to Marvel. Apex's entire case rested upon circumstantial evidence. For each of the four loads of oil, Apex produced a bill of lading from the oil refinery. The bills of lading indicated that Ee-Jay Transport Company (Ee-Jay) took receipt of the oil from the refinery. Also, Apex produced the dispatch sheets from Ee-Jay for the dates involved. These dispatch sheets only indicate that the dispatcher at Ee-Jay had ordered the driver to commence loading and that for some of the four loads involved, the driver informed the dispatcher that their truck was empty. The drivers of the trucks did not testify and Ee-Jay did not physically verify the actual delivery of any of the loads.

Testimony concerning the volume of past business between the parties showed that from 1966 to 1971 Apex sold at least Fifty-thousand dollars ($50,000.00) worth of fuel oil to Marvel every winter season. Mrs. Beldner, defendant's wife, handled the billings and disbursements for Marvel during February of 1971. Mrs. Beldner died on June 28th of 1971 and defendant's daughter-in-law, Pam Beldner, took over the books of Marvel. The books were in a state of disarray. Pam Beldner then requested copies of all of the outstanding delivery tickets from Apex. By the time this suit was filed on August 10th of 1972, Marvel had paid Apex for all monies alleged to be due and owing, except for the amount due on Invoice No. 140151, $3,366.46.

Pertinent to our discussion of the monies allegedly due on Invoice # 140151, is the fact that Marvel did pay Apex for over 24,000 gallons of oil that was received on February 6th and 8th, 1971. Interrogatories, propounded by Apex to defendant Mr. Beldner, which were read into the record at trial, revealed the total storage capacity of the Marvel storage tanks located at 6258 Etzel Ave., as of February 6th, 1971, to be 90,000 gallons. Storage tanks for No. 1 fuel oil had a capacity of 15,000 gallons and No. 2 fuel oil capacity was listed at 75,000 gallons. The interrogatories also revealed that during the month of February, 1971, Marvel was supplied by three other oil companies beside Apex; they were Ashland, Marine and Clark Oil Companies.

■ Plaintiff's first contention related to the court giving the jury defendant's Instruction No. 5. In order to discuss Instruction No. 5, the relevant instructions as to Count I need to be considered also.

"Instruction No. 3

Your verdict must be for Plaintiff under Count I of its petition if you believe:

First, at defendant's request plaintiff *furnished* to defendant *certain fuel oil* between February 6, 1971 and February 8, 1971, and

Second, plaintiff charged a total of $3,366.46 for such oil, and

Third, plaintiff's charges were reasonable, and

Fourth, said fuel oil was not paid for by defendant. MAI 26.03 modified. Offered by Plaintiff.

"Instruction No. 4

If you find the issues in favor of plaintiff, under Count I of plaintiff's petition, you must award plaintiff the reasonable *value of the goods furnished* with interest from March 1, 1971. MAI 4.04 modified. Offered by Plaintiff.

"Instruction No. 5

Your verdict must be for defendant on Count I of plaintiff's petition unless you believe that the defendant *received the oil described in Invoice No. 140151* on February 6 and February 8, 1971. MAI 33.02 modified. Offered by Defendant." (emphasis added)

Plaintiff contends that Rule 70.01(f) [1] has been violated in that defendant, Marvel, has not conversed an essential element of plaintiff's case. As Rule 70.01(f) states, the defendant may converse any essential fact or element essential to plaintiff's case. Instruction No. 3, offered by plaintiff, states that you will find for the plaintiff if plaintiff *furnished* to defendant certain fuel oil. The key word is furnish. Furnish is defined as: "To supply or provide . . . to deliver, whether gratuitously or otherwise. . . ." Blacks Law Dictionary 804 (4th ed. 1968). In order to furnish a product to another, a necessary element of the act of furnishing is making the product available to the intended purchaser. In the case at bar, furnishing would include the delivery of the oil to defendant's place of business. Defendant's converse used the phrase, "*received* the oil described in Invoice No. 140151 . . ." Received is defined as: "[T]o take or come into possession of, . . . to take in, [to] hold . . . ." Webster's Seventh New Collegiate Dictionary 714 (1965). Defendant denied from the very outset of this litigation that the oil actually came into his possession. Received as used in the instructions of this case, does converse an element essential to plaintiff's recovery; actual delivery by Apex of the quantities of oil in question.

Plaintiff's second contention is that the converse instruction is not in substantially the same language as plaintiff's verdict director. The discussion set out above details the difference in language between the two instructions. The test as to whether or not the variance in language is significant is whether the same legal theory is contained in both of the instructions. *Bartleman v. Humphrey,* 441 S.W.2d 335, 348 (Mo.1969). In determining the sufficiency of the instructions in this case, the court should not, as it is well stated in *Bartleman,* 441 S.W.2d at 348: "[B]e hypertechnical in requiring grammatical perfection, the use of certain words or phrases, or any particular arrangement or form of language, but * * * should be concerned with the meaning of the instruction * * to a jury of ordinarily intelligent laymen * * *."

The instructions in question, No. 3 and No. 5, submitted the issues in terms within the understanding of the jurors. *Tietjens v. General Motors Corp.,* 418 S.W.2d 75, 86[9] (Mo.1967). Plaintiff alleged he "furnished certain fuel oil" and defendant defended on the ground that he never received the oil. The essential element of delivery is properly conversed.

The other phrase of which plaintiff complains is the use by defendant, in his converse, of the words "the oil described in Invoice No. 140151," to identify the "certain fuel oil" which plaintiff contends he furnished. The only quantities of fuel oil in dispute in this case are the four loads of oil described and billed on Invoice No. 140151. Defendant's converse instruction merely

---

1. Rule 70.01(f)

"*Instruction Directing Verdict—Converse Instruction.*

Instructions may be given, authorizing a verdict for a defendant, upon finding the converse of any essential fact or element essential to a verdict for plaintiff. The request of a converse instruction shall not be deemed to waive any objection to the instruction conversed.

further defined plaintiff's instruction "certain fuel oil," by substituting the phrase "the oil described in Invoice No. 140151." No confusion or misdirection of the jury could have resulted because the oil described by Invoice No. 140151 and certain fuel oil are the same loads of oil and they are the only quantities of oil in dispute.

Plaintiff cites this court to *Anderson v. Cahil,* 528 S.W.2d 742, 747 (Mo. banc 1975) and *Austin v. Western Auto Supply Co.,* 421 S.W.2d 203, 205 (Mo.1967) for the proposition that a true converse must use substantially the same language as the verdict director; and that failure to do so, leads to confusing instructions and is grounds for reversal. This statement of the law is correct, but it is not supportive of plaintiff's position. In *Anderson,* 528 S.W.2d 742, the Missouri Supreme Court had before it an action for injuries sustained by a 4 year 10 month old child when he fell into an unguarded 10 foot deep excavation in a residential area of Independence, Missouri. The court reversed the case for a new trial because of errors in the instructions. The court stated that it was difficult to determine from the instruction, "which elements of plaintiff's case the converse instruction is directed." The court went on to state that, combining the fact that the converse instruction was not in "substantially the same language," with the misleading and confusing nature of the instruction, that the defendant failed to demonstrate to the court's satisfaction that this error did not have a prejudicial effect on the plaintiff. Consequently, the case was reversed.

In *Austin,* 421 S.W.2d 203, the action was one for breach of the implied warranty of fitness of the product for the use intended. Plaintiff purchased an automobile bumper jack for a 1957 Buick. The jack malfunctioned, injuring plaintiff. Plaintiff, in his verdict director, submitted ". . . the jack was not fit for such use." Defendant undertook to converse the element of unfitness for the use intended and causation. In so doing, defendant used the phrase, "as a direct result of the condition of the jack."

The court ruled that the "condition" of the jack was not an issue. The jack could have been in excellent condition, the issue being whether it was fit for use on plaintiff's car. The court further ruled that this was a misdirection of the jury, "which permitted the jury to determine the case on the basis of a false issue, [and as such] constituted reversible and prejudicial error." *Austin,* 421 S.W.2d at 205.

In the case at bar, as opposed to *Anderson,* there is no difficulty in determining that the first element of plaintiff's verdict director is being conversed, and the language, although different, is synonymous and as such could not have misled the jury. The *Austin* case was ruled on the basis of the converse instruction injecting a false issue into the case. The instruction in question in this case did not inject any such false issue as is evidenced by the discussion set out above.

Plaintiff's third contention in regard to the instructions is that Instruction No. 5 erroneously instructed the jury that defendant had to receive all of the four loads of oil before plaintiff could recover. This contention, which has its origins in the variance in language between the verdict director and the converse must be considered in light of the instructions taken as a whole. *Ernst v. Emerick,* 525 S.W.2d 573 (Mo.App.1975). Defendant's converse instruction, Instruction No. 5, clearly requires that before the jury can find for the defendant, Marvel, the jury must believe that defendant did not receive any of the oil listed in the invoice. Otherwise stated, if any of the oil billed in Invoice No. 140151 was delivered, the jury would have to bring in a verdict for plaintiff. The damages would then be assessed in accordance with the damage instruction, Instruction No. 4. We should also note that juries are ". . . composed of ordinarily intelligent persons who should be credited with having common sense and an average understanding of our language." *Demko v. H & H Investment Company,* 527 S.W.2d 382 (Mo.App.1975). This court would be engaging in conjecture and supposition if we were to assume that the jury read In-

struction No. 5 as an all or nothing proposition, and that they then totally ignored Instruction No. 4, which provided for "the reasonable value of goods furnished." We find that the instructions, when read together, are clear and unambiguous and we do not find any prejudicial errors which materially affect the merits of the case. *See Demko v. H & H Investment Company,* 527 S.W.2d 382, 386 (Mo.App.1975); *Collier v. Roth,* 515 S.W.2d 829 (Mo.App.1974); and Rule 84.13(b).

Plaintiff's second point relied on and final contention is that the trial court erred in overruling plaintiff's motion to set aside verdict and judgment and to enter judgment in favor of plaintiff in that under the evidence, verdict and judgment should have been directed for plaintiff because from the evidence no reasonable man could believe that defendant received no oil. Plaintiff's contention is without merit. The question of whether Apex delivered the oil to Marvel was one of fact that was properly determined by a jury. Under all the evidence in this case, including the testimony of defendant, it was not established as a matter of law that defendant was liable. *See Rogers v. Thompson,* 364 Mo. 605, 265 S.W.2d 282 (Mo. banc 1954). The testimony in this case is not such, as to leave no room for reasonable minds to differ, as to the conclusion to be drawn from the evidence. As such is the case, no verdict should have been directed for plaintiff. *Vincent v. Raffety,* 344 S.W.2d 293 (Mo.App.1961). *See generally Price v. Bangert Brothers Road Builders, Inc.,* 490 S.W.2d 53, 58 (Mo.1973).

Finding no error the judgment is affirmed.

WEIER, P. J., CLEMENS and STEWART, JJ., and RONALD M. BELT, Special Judge, concur.