**Doris LINTON, Robert Hertlein, Carolyn Hertlein, Heather Case, Michelle Case, and Patrick Case, Plaintiffs–Respondents,**

v.

**MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Defendant–Appellant.**

No. 71807.

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 18, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 26, 1998.

Application for Transfer Denied
Dec. 22, 1998.

Zachary T. Cartwright, Jefferson City, for defendant-appellant.

Gray & Ritter, P.C., John G. Simon, Timothy L. Hill, St. Louis, Gary Growe, Clayton, for plaintiffs-respondents.

PUDLOWSKI, Judge.

This cause was transferred to the Supreme Court upon appellant's application to transfer. This matter was re-transferred to this court for reconsideration in light of *State v. Dierker*, 961 S.W.2d 58 (Mo. banc 1998). We re-issue our opinion and dissent and address the opinion herewith in light of *Dierker*.

Missouri Highway and Transportation Commission (MHTC) appeals the jury verdict in favor of plaintiffs, the survivors of Sandra Hertlein, Ted Linton and Bobbie Case (Respondents) for wrongful death arising from a highway accident. MHTC claims the trial court erred by overruling its motions for directed verdict and judgment notwithstanding the verdict, asserting insufficient evidence to support a jury verdict for Respondents. Additionally, MHTC asserts the trial court erred in instructing the jury

with modified MAI instructions, disallowing MHTC's converse instruction, and refusing to instruct the jury with an instruction submitted by MHTC. We affirm.

On October 8, 1989, at approximately 3 a.m., Sandra Hertlein, Ted Linton, and Bobbie Case left a bar in Laclede's Landing. For purposes of appeal, both parties acknowledge that Sandra Hertlein was driving. Their vehicle headed west on I–70 and left the highway at the Union Boulevard exit, which exits from the left side of the highway near reversible lanes which run between the normal lanes of traffic. At the end of the ramp, the vehicle ran three flashing red traffic signals, nearly collided with an ambulance, and finally crashed into the concrete railing on the far side of the overpass. All three occupants were killed in the accident. After the accident, all three were found to have heightened blood alcohol levels. Sandra Hertlein's blood alcohol content was .188 percent, and Ted Linton's was .064 percent. Bobbie Case's blood alcohol content was also high, but was never relevant because she was not an alleged driver. Survivors of the victims filed wrongful death suits alleging concurrent acts of negligence against MHTC for negligent design and warning on the exit and negligent driving of the defendants. Respondents settled the suit between themselves, and trial was held against MHTC. The jury found for the Respondents, awarding damages of $500,000 to Linton, $250,000 to Hertlein, and $1,500,000 to Case. MHTC was 20% at fault, and Respondents 80% at fault. MHTC appeals.

In review of trial court rulings on motions for directed verdict and judgment notwithstanding the verdict, we review the evidence in the light most favorable to the verdict. *Seward v. Terminal R.R. Ass'n*, 854 S.W.2d 426, 428 (Mo. banc 1993). The prevailing party is entitled to the benefit of all reasonable inferences favorable to the verdict, while any unfavorable inferences are disregarded. *Garrett v. Overland Garage & Parts, Inc.*, 882 S.W.2d 188, 190 (Mo.App. E.D.1994); *Hellmann v. Droege's Super Market, Inc.*, 943 S.W.2d 655, 657 (Mo.App. E.D.1997). "In determining whether the evidence was sufficient to support a jury instruction, the evidence is viewed in the light most favorable to the offering party, and we give the offering party the benefit of all reasonable inferences" (citations omitted). *Id.*

■ Section 537.600 RSMo (1994) waives governmental immunity for conditions of property when the property is in a dangerous condition due to a negligent or wrongful omission, a reasonably foreseeable injury directly results, and the public entity had actual or constructive knowledge of the problem and could have corrected it. It further establishes an absolute waiver of immunity in the instances specified and abolishes any distinction between governmental and proprietary acts as a test of governmental liability. *Fox v. City of St. Louis*, 823 S.W.2d 22, 24 (Mo.App. E.D.1991). A dangerous condition may exist due to the negligent, defective, or dangerous design of public roads and highways. *Donahue v. City of St. Louis*, 758 S.W.2d 50, 52 (Mo. banc 1988); *Cole v. Missouri Highway and Transportation Commission*, 770 S.W.2d 296, 298 (Mo.App. W.D. 1989).

■ First, MHTC contends the highway was not a dangerous condition. The Missouri Supreme Court case *Donahue v. City of St. Louis* applied the statute to facts similar to the instant case. 758 S.W.2d at 52. In *Donahue*, the Court held the Section 537.600 waiver of sovereign immunity for negligent, defective, or dangerous road design included liability for a fallen stop sign. *Donahue*, 758 S.W.2d at 52. Following the *Donahue* logic, in *Fox* this Court reversed summary judgment in favor of the government where the government had failed to reinstall a stop sign. 823 S.W.2d at 23. The plaintiff had broad-sided another car because she did not stop at an intersection. *Id.* In *Nagy v. Missouri Highway and Transportation Commission*, 829 S.W.2d 648, 650 (Mo.App. E.D. 1992) this Court imposed statutory liability where the plaintiff's injuries were caused by inadequate signing. The stop signal was moved back several feet the previous day without proper signing to notify motorists of the change, and the plaintiff was injured when he drove across newly opened lanes of traffic. *Id.* at 649. In *Cole v. Missouri Highway and Transp. Comm'n*, 770 S.W.2d

296, 298 (Mo.App. W.D.1989) the court held the plaintiff properly plead a dangerous condition in property by alleging failure to warn of a sudden and obscured curve in the road. Likewise, *Wilkes v. Missouri Highway and Transportation Commission,* 762 S.W.2d 27, 28 (Mo. banc 1988), held the plaintiff properly plead a dangerous condition because a bridge lacked signing to warn of dangerously icy conditions on a bridge. *Cole* and *Wilkes* are particularly relevant in that they concern dangerous conditions that were not the result of recent negligence (i.e. failure to replace a stop sign), but general failure to post adequate signing.

In the instant case, there was sufficient evidence to find a dangerous condition under *Donahue* and its progeny. Respondents' expert testified the signs and directions placed on the highway were inadequate because they did not follow the directives of the Manual on Uniform Traffic Control Devices. While the signs at the Union intersection complied with the 1971 edition of the Manual which controlled when the ramp was built in 1976, they had not been updated to comply with the guidelines set out in the 1988 edition. The expert further testified that signing changes are generally made as soon as possible because they are relatively inexpensive.

In its opening argument, MHTC made a strategic decision to concede changes made to the ramp shortly after the accident. The subsequent remedial measures included rumble strips, alternating flashing lights attached to truss posts at the exit ramp, an advisory speed sign, and a system attenuator, or a device to absorb the impact of cars crashing into walls.

Testimony also centered on the relative dangerousness of left hand exits as opposed to right hand exits. Appellant's expert witness testified that left exits are dangerous because they are unexpected and confusing to motorists traveling on the highway. A police officer testified that it was easy to "get into trouble" if he was "daydreaming or talking on the radio." He concluded that there was "no margin for error." MHTC's expert conceded that it was highly unusual to have a left exit combined with a reversible lane between normal traffic lanes. Diagrams and photographs entered into evidence show the reversible lanes are very close to the exit ramp, which could cause drivers to mistakenly believe they were entering the reversible lanes rather than exiting. Inadequate signing for a left exit is much like the signing for the dangerous curve in *Cole* in that the street itself constituted a dangerous condition without proper signing. On these facts, the trial court did not abuse its discretion in overruling MHTC's motion for directed verdict.

MHTC seeks to distinguish *Donahue* by arguing that the case concerned negligent maintenance versus, as here, negligent design. MHTC also argues that a showing that some other design would have been more effective does not constitute a submissible case, citing *Hedayati v. Helton,* 860 S.W.2d 795 (Mo.App. W.D.1993). *Hedayati* dismissed a similar claim based on inadequate signing because there was not a design defect in the road itself. *Id.* at 796. However, increased safety from an alternate design was precisely the basis for the holdings in the *Wilkes* and *Cole* cases, *supra.* In those cases, as here, the trial court held that the roads in question would have been safer with better signing and warnings, because the roads constituted dangerous conditions. *See Wilkes,* 762 S.W.2d at 27; *Cole,* 770 S.W.2d at 298.

 MHTC argues that the dangerous condition, as a matter of law, did not "directly cause" the accident. Rather, MHTC argues, the negligence of the driver in driving while intoxicated was a supervening cause. Evidence of alcohol consumption was entered at trial. *See, Rodriguez v. Suzuki Motor Corp.,* 936 S.W.2d 104, 108 (Mo. banc 1996). However, even where the driver is negligent, Respondents are not foreclosed from recovery. *Id.; Cole,* 770 S.W.2d at 299. Rather, fault is apportioned between responsible parties. *Id.* Where the plaintiff is alleged to have been negligent because of drinking, then the defendant is entitled to a converse instruction. *Rodriguez,* 936 S.W.2d at 109. Such instructions were submitted in this

case.[1] While evidence at trial showed that all of the people in the vehicle had heightened blood alcohol levels, the jury apparently considered this element in allocating only twenty percent of the fault to MHTC.

MHTC cites *Hellmann v. Droege's Super Market, Inc.*, 943 S.W.2d 655 (Mo.App. E.D. 1997) and *Harris v. Niehaus*, 857 S.W.2d 222 (Mo. banc 1993) for the proposition that Respondents should not recover because they failed to exercise due care. MHTC argues the driver, because she had been drinking, failed to exercise due care in avoiding the open and obvious dangers of the exit ramp. The *Hellmann* court allowed the plaintiff's claim where she slipped on an icy parking lot because the ice was not an open and obvious danger. *Hellmann*, 943 S.W.2d at 660. In contrast the *Harris* court dismissed the cause of action where a woman left her car parked on a steep incline and her children drowned when the car, with the children inside, rolled down the hill and into a lake. *Harris*, 857 S.W.2d at 226. The court ruled that the plaintiff should have been aware of the danger of parking on the steep hill, and did not hold the defendants, subdivision trustees, liable. This case resembles *Hellmann*. Much of the evidence in this case centered on the fact the intersection was dangerous precisely because it was not open and obvious. While the steep hill in *Harris* was dangerous but obvious, the exit ramp in the instant case was dangerous because it was not obvious. In addition, the hill in *Harris* was a natural condition, while the exit ramp and signing are man made. Therefore, it was not error for the trial court to overrule MHTC's motion to dismiss based on this issue.

■ MHTC is under a duty to maintain the roadway so that it is safe for drivers. Whether a duty exists is a question of law for the court. *Rothwell v. West Cent. Elec. Coop.*, 845 S.W.2d 42, 43 (Mo.App. W.D.1992). Well established Missouri law is that the government must maintain its streets in a reasonably safe condition. *Lavinge v. City of Jefferson*, 262 S.W.2d 60, 63 (Mo.App.W.D. 1953). However, MHTC is not under a duty to protect from all accidents, but only those that are foreseeable. *Williams v. City of Independence*, 931 S.W.2d 894, 896 (Mo.App. W.D.1996).

■ This accident was foreseeable. An injury is foreseeable if a driver who is using the roadway in a normal manner, or only deviating very slightly from the roadway, may be injured by the placement and maintenance of the dangerous conditions. *Williams*, 931 S.W.2d at 896. Respondents' vehicle never left public property, even though their car had to go over a curb and hit a retaining wall which was slightly off the roadway. The retaining wall formed the "T" shape of the intersection, and was also owned by the state. In addition, the wall may be considered a part of the exit ramp itself,

---

1. Each of three instructions in the case referred to intoxication by various parties. The instruction for Theodore Linton read:

> In your verdict, you must assess a percentage of fault to decedent Theodore Linton, if you believe:
> First, either: at the time decedent Theodore Linton entered the automobile, Sandra Hertlein was intoxicated to the extent that her driving ability was impaired, and
> Second, decedent Theodore Linton entered the automobile knowing that Sandra Hertlein was in such an intoxicated condition, and
> Third, decedent Theodore Linton was thereby negligent, and
> Fourth, such negligence and the impaired driving ability of Sandra Hertlein directly caused or directly contributed to the cause of the death of Theodore Linton.

The instruction for Bobbie Case, instruction 18 was substantially similar to Theodore Linton's.

The alleged driver's instruction, number 14 for Sandra Hertlein, read:

> In your verdict, you must assess a percentage of fault to decedent Sandra Hertlein, if you believe:
> First either:
> decedent Sandra Hertlein operated her vehicle while in an intoxicated condition, or
> Decedent Sandra Hertlein failed to keep a careful lookout, or
> decedent Sandra Hertlein drove at an excessive speed, or
> decedent Sandra Hertlein violated the traffic signals at Union Boulevard, and
> Second, decedent Sandra Hertlein, in any one or more of the respects submitted in Paragraph First, was thereby negligent, and
> Third, such negligence of decedent Sandra Hertlein directly caused or directly contributed to cause the death of decedent.

which, combined with the inadequate signing, is the "dangerous·condition" at issue here. This case is distinguishable from those which have held that the accident was not foreseeable even though the collisions took place within a few feet of the roadway but not on the roadway. *See, Clinkenbeard v. City of St. Joseph*, 321 Mo. 71, 10 S.W.2d 54 (1928), *Lavinge v. City of Jefferson*, 262 S.W.2d 60 (Mo.App. W.D.1953), *Rothwell v. West Central Elec. Co-op.*, 845 S.W.2d 42 (Mo.App. W.D.1992), *Noe v. Pipe Works, Inc.*, 874 S.W.2d 502 (Mo.App. E.D.1994), *Godfrey v. Union Electric Co.*, 874 S.W.2d 504, 505 (Mo. App. E.D.1994). In those cases, the plaintiff's car struck a wall or utility pole that was privately owned. In the instant case, the wall was very few feet from the roadway, formed part of the overpass, and was owned by the state.

Finally, MHTC had actual knowledge of an alleged dangerous condition at the exit. The parties stipulated that MHTC had received prior communication from a citizen that the exit was dangerous.

In its second point on appeal, MHTC asserts that the trial court erred in submitting instructions 9, 13, and 17 because the instructions were not supported by substantial evidence and they were impermissible modifications of the MAI instructions.[2] MHTC's contention that the instructions were not supported by substantial evidence has been addressed in the preceding part of this opinion.

■ Nevertheless, MHTC complains that paragraph first does not comport with law in Missouri. Because this case is based on the theory that the exit is dangerous because of inadequate warning, *Donahue* controls. Signs and traffic controls can be a part of negligent, defective, or dangerous mainte-

nance and design of state roads and highways. *Donahue*, 758 S.W.2d at 52. Since instructions 9, 13, and 17 were submitted on the basis that MHTC failed to warn of the dangerous left exit, and thus addresses signing and design, it was not error to submit those instructions.

■ MHTC also alleges that paragraph four of those instructions improperly addresses causation. This point also has been previously addressed in this opinion. The proper standard is if reasonable minds could differ as to causation under the facts of each case, then it is a question that must be submitted to the jury. *McFarland v. Grau*, 305 S.W.2d 91, 101 (Mo.App. St.L. 1957). Substantial amounts of evidence at trial, much of which was referenced, *supra*, was devoted to showing that the left hand exit was dangerous and could catch drivers unaware due to the lack of signing. We believe that reasonable minds could have differed on this issue.

MHTC alleges that instructions 9, 13, and 17 were impermissible modifications of MAI 31.16. MHTC protests that paragraph one was a impermissible modification that gave the jury a "roving commission" to find for Respondents if there was an inadequate warning. However, paragraph one of the verdict director mirrors the instruction found in MAI, which reads: "First, (here describe condition that made the public entity's property dangerous, such as 'there was oil on the gymnasium floor' or 'the table saw was unguarded'), and as a result the defendant (describe property, such as 'gymnasium floor' or 'table saw') was not unreasonably safe. . . ." Because there was no modification, there is no error in this part of the instruction.

■ The only modification in the instruction is in paragraph four, which was modified from "as a direct result of such

2. Instruction No. 9 reads:

> In your verdict you must assess a percentage of fault to defendant Missouri Highway and Transportation Commission whether or not Theodore Linton was partly at fault if you believe:
> First, there was inadequate warning that at Interstate 70 and Union, there was an exit ramp leading to a "T" intersection and, as a result, the exit was not reasonably safe, and

> Second, defendant knew or by using ordinary care could have known of this condition in time to remedy such condition, and,
> Third, defendant failed to use ordinary care to remedy such condition, and
> Fourth, such failure directly caused or directly contributed to cause the fatal injury to Theodore Linton.
> The same verdict directors were given on the claims of the other two Respondents, Hertlein and Case.

failure, plaintiff sustained damages," to "such failure directly caused or directly contributed to cause the fatal injury to Theodore Linton." The change seems to be based on MAI 37.01 instructions for modifying instructions for comparative fault cases. This court can only reverse if the instruction misdirected, mislead, or confused the jury. *Petry Roofing Supply, Inc. v. Sutton*, 839 S.W.2d 337, 342 (Mo.App.1992). Even with a deviation from MAI, we may not reverse unless there is a substantial indication of prejudice. *Larabee v. Washington*, 793 S.W.2d 357, 359 (Mo.App. 1990). This modification did not mislead the jury, nor was there any appearance of prejudice.

■ MHTC alleges the trial court committed prejudicial error because it did not submit MHTC's converse instruction, Instruction A.[3] A verdict will not be reversed for instructional error unless the error was prejudicial. *Apex Oil Co. v. Beldner*, 567 S.W.2d 336, 339 (Mo.App.1978). MHTC has not shown prejudice from the court's refusal to submit Instruction A. In its brief, MHTC admits that it was permitted to substantially argue the issue in Instruction A to the jury on closing argument. Since the issue was fully before the jury, MHTC did not suffer prejudice.

■ Finally, MHTC argues that the trial court erred in refusing to submit its tendered Instruction C.[4] MHTC alleges the court should have instructed the jury on the state of the art defense found in Section 537.600.1(2) RSMo (1994),[5] which protects MHTC from suit over the design of highways built before September 1977. Again, the standard of review is abuse of discretion. *Apex*, 567 S.W.2d at 339. The trial court did

not abuse its discretion in refusing to tender Instruction C because the ramp was resigned and resurfaced in 1984, after the statutory cutoff in 1977. Respondents elicited evidence that signing changes were made at that time. In addition, new standards were promulgated for modified signing in 1981. While the statute protects the overall design of the roadway, it is reasonable for MHTC to make signing changes since MHTC made modifications to the other signing in the area. Point denied.

We now address the case sub judice in light of *State v. Dierker*, 961 S.W.2d 58 (Mo. Banc 1998). In *Dierker* the plaintiffs sued MHTC and other defendants alleging MHTC was negligent by constructing an inadequate fence, leaving loose pieces of concrete on the overpass and failing to light it adequately. MHTC filed a writ of mandamus because the circuit court ruled that MHTC was subject to suit under the dangerous-conditions-of-property exception in section 537.600.1(2).

Additional facts indicate that a fifteen year old dropped a twenty pound chunk of concrete onto the deceased's automobile, killing her. The trial court overruled the summary judgment motion, stating that it could not, as a matter of law, rule that the *conditions* of the overpass "had no connection" to the death. The trial court continued that MHTC was not entitled to judgment because "the incident leading to the death of the [deceased] would not have been possible absent the physical conditions of the overpass."

The Supreme Court, after reviewing the facts, determined that the issue in this case is the second requirement of section 537.600.1(2) i.e., "that the injury directly resulted from the dangerous condition." *Id.* at

---

3. The instruction was, "Your verdict must be for defendant unless you believe the Union Boulevard exit was not reasonably safe at the time of decedent's accident."

4. Proposed Instruction C read: "The issue of whether the advance guide and interchange sequence signing on I-70 complied with standards on October 8, 1989, is withdrawn from the case and you are not to consider such issue in arriving at your verdict."

5. Section 537.600.1(2) RSMo (1994) reads: "In any action under this subdivision wherein a

plaintiff alleges that he was damaged by the negligent, defective or dangerous design of a highway or road, which was designed and constructed prior September 12,1977, the public entity shall be entitled to a defense which shall be a complete bar to recovery whenever the public entity can prove by a preponderance of the evidence that the alleged negligent, defective, or dangerous design reasonably complied with highway and road design standards generally accepted at the time the road or highway was designed and constructed."

60. The court continued and said that, the phrase, "directly resulted from" in section 537.600.1(2) is synonymous with "proximate cause" and "the practical test of proximate cause is generally considered to be whether the negligence of the defendant is that cause or act of which the injury was the natural and probable consequence." *Id.*

The Supreme Court concluded, that even assuming that the overpass was in a dangerous condition, that condition did not directly cause the plaintiff's death.

In the instant case, the plaintiffs charged the MHTC and others with acts of concurrent negligence, each dangerous condition pertaining to the state, standing alone, would be sufficient to be the direct cause of the injury sustained by plaintiffs or it directly contributed to cause the injuries.

As previously described, there was sufficient evidence to support the jury's finding. The jury was instructed that if MHTC failed to remedy the condition and that said failure directly caused or directly contributed to cause the injury it *must* assess a percentage of fault to MHTC regardless of the concurring fault of the other parties. The jury so found.

We conclude that the MHTC created a dangerous condition which directly or indirectly resulted in injuries causing death and it was not immune from suit as in *Dierker.*

The judgment is affirmed.

STANLEY A. GRIMM, Senior Judge, dissents in separate opinion.

GARY M. GAERTNER, J., concurs.

STANLEY A. GRIMM, Senior Judge, dissenting.

I respectfully dissent. The trial court erred in giving plaintiffs' verdict directing instructions. Paragraph First of those instructions is not supported by the evidence. I would reverse and remand for a new trial.

The three verdict directing instructions were identical except for the name of the deceased person on which each claim was based. Each read:

In your verdict you must assess a percentage of fault to defendant Missouri Highway and Transportation Commission whether or not [the deceased person] was partly at fault if you believe:

First, *there was inadequate warning that at Interstate 70 and Union, there was an exit ramp leading to a "T" intersection* and, as a result, the exit was not reasonably safe, and

Second, defendant knew or by using ordinary care could have known of this condition in time to remedy such condition, and

Third, defendant failed to use ordinary care to remedy such condition, and

Fourth, such failure directly caused or directly contributed to cause the fatal injury to [the deceased person]. (emphasis added).

Viewed in a light most favorable to the verdicts, there was evidence of the general inadequacy of the signage. However, none of the evidence concerns the necessity for a warning that "at Interstate 70 and Union, there was an exit ramp leading to a 'T' intersection."

Plaintiffs' expert testified that the signs "were not adequate because they did not follow the directives of the Manual on Uniform Traffic Control Devices." He identified four signs on Interstate 70 concerning the Union exit. The first sign was located about a mile and a half from the exit; he said it should have been two miles. The second sign is a half mile closer. He testified that both of these signs failed to meet the current manual's directives by failing to reference a left exit.

The next sign is about a quarter of a mile from the exit; it is a green sign with white lettering that says "Union Boulevard next left." He testified the sign did not meet the current manual's directives because the left lane exit must be specified "left exit" and must be yellow with black lettering. The fourth and final sign was a sign at the ramp which said "Union" with an arrow pointing to the left.

That is the sum and substance of the expert's testimony concerning standards for

signage on Interstate 70. Nothing in that testimony concerned any standard that a warning should be given that "there was an exit ramp leading to a 'T' intersection" or that the warning should be "at Interstate 70 and Union."

In an attempt to overcome this deficiency, plaintiffs point to expert's later testimony. On cross examination, defense counsel emphasized the approximately eight-hundred foot long ramp that had red flashing stop lights at the top of the exit. He asked the expert about stopping distances and reaction times. On redirect, plaintiffs' counsel asked, "[I]sn't the real issue not how much time it takes to stop after you realize you have to stop, but telling the motorist that you have to stop ahead?" The expert replied, "Yes." Counsel continued, "Isn't that the real issue in this case?" The expert again said "Yes."

Plaintiffs' counsel continued, asking, "In your professional opinion, would these red flashing lights alone be adequate to warn a motorist that they need to stop at the end of that Union exit?" Following the overruling of an objection, plaintiffs' counsel asked: "Mr. Roden, would the lights by themselves, with no other signage, would that be adequate?" He responded, "Not for someone still on Route 70 ... or on the deceleration, maybe even on the deceleration lane."

This testimony was insufficient to support the giving of paragraph First. Nothing in the expert's testimony expressed his personal opinion or referenced any industry standard that there should be a warning "at Interstate 70 and Union, there was an exit ramp leading to a 'T' intersection."

I would reverse and remand for a new trial.