

# In the
# Missouri Court of Appeals
## Western District

ERIN THOMPSON AND )
CLARENCE BELL, XAVIOR )
DYDELL, A MINOR, BY AND ) **WD82589 Consolidated with**
THROUGH HIS MOTHER AND ) **WD82590, WD82591 and WD82592**
NEXT FRIEND, AMBER DYDELL, )
CARISSA WILSON AND KARLO ) **OPINION FILED:**
GINN, SR., ) **December 17, 2019**
)
        **Appellants,** )
)
v. )
)
CITY OF ST. JOSEPH, MISSOURI, )
)
        **Respondent.** )

**Appeal from the Circuit Court of Buchanan County, Missouri**
The Honorable Daniel F. Kellogg, Judge

Before Division Three: Alok Ahuja, Presiding Judge, Gary D. Witt, Judge and
Anthony Rex Gabbert, Judge

Erin Thompson; Clarence Bell; Xavior Dydell, by and through his mother and next

friend, Amber Dydell; Carissa Wilson; and Karlo Ginn, Sr.[1] (collectively "Appellants")

---

[1] This case arises from an automobile collision where three passengers in the vehicle were killed and one passenger (Dydell) was injured. All of the Appellants, except Dydell, brought actions for wrongful death based on the loss of their loved ones. Dydell was a minor, and his mother brought this action as next friend for the injuries to her son. For ease of reference, we will refer to the victims by their last names rather than the named plaintiffs in the underlying lawsuits who are acting in their representative capacities. No familiarity or disrespect is intended.

appeal from the Circuit Court of Buchanan County's summary judgment finding in favor of the City of St. Joseph ("City"). The Appellants raise one point on appeal and request this Court reverse the grant of summary judgment and remand for trial. We reverse and remand.

## Factual Background[2]

The City owns and maintains Riverside Road, which consists of one northbound lane and one southbound lane located within the City. On April 14, 2017, Skylar Lucas-Cox ("Lucas-Cox") drove a stolen Toyota Tundra in the northbound lane of Riverside Road, traveling at 62 miles per hour in a 40 miles per hour zone. The Tundra's passenger-side wheels left the lane of travel onto the roadside. The edge of the roadway did not have a line marking its location and there was an approximate nine inch drop-off from the edge of the pavement onto the roadside. When Lucas-Cox attempted to remount the roadway, the vehicle veered sharply to the left and collided with a car in the southbound lane driven by Jacob Stallworth ("Stallworth"). The Tundra had five passengers in addition to Lucas-Cox, and three of the passengers: Ginn, Jr., Crockett, and Thompson died in the collision. Dydell was seriously injured.

On September 25, 2017, Lucas-Cox pled guilty to the criminal charges of two counts of involuntary manslaughter and one count of second degree assault and as part of the factual basis for the plea admitted that he was impaired by drugs and/or alcohol at the time of the accident.

---

[2] In reviewing a challenge to a trial court's grant of summary judgment, "we review the record in the light most favorable to the party against whom judgment was entered." *Bram v. AT&T Mobility Servs., LLC,* 564 S.W.3d 787, 794 (Mo. App. W.D. 2018).

2

On July 28, 2017, Dydell petitioned to recover damages against the City for the injuries he sustained in the accident and alleged that Riverside Road was in a dangerous and defective condition because the road had an "unreasonable and treacherous roadway drop-off on the east edge . . . which was unmarked and not maintained for the safe operation of motor vehicles." On August 23, the remaining Appellants filed petitions for damages in wrongful death raising the same allegations regarding the dangerous condition of Riverside Road. In its answer, the City denied the allegations and raised sovereign immunity as an affirmative defense. After a period of discovery, the City moved for summary judgment. The circuit court conducted a hearing, and the court entered its order granting summary judgment in favor of the City on February 22, 2019. This appeal followed.[3]

## Standard of Review

The Missouri Supreme Court has outlined our applicable standard of review for summary judgment:

> The trial court makes its decision to grant summary judgment based on the pleadings, record submitted, and the law; therefore, this Court need not defer to the trial court's determination and reviews the grant of summary judgment *de novo. ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993); Rule 74.04. In reviewing the decision to grant summary judgment, this Court applies the same criteria as the trial court in determining whether summary judgment was proper. *Id.* Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law. *Id.* The facts contained in affidavits or otherwise in support of a party's motion are accepted "as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.* Only genuine disputes as to material facts preclude summary

---

[3] Because the parties to each action filed nearly identical Motions for Summary Judgment and Suggestions in Opposition, the circuit court consolidated the Appellants' separate causes of action for the purposes of the hearing on summary judgment. Each Appellant filed separate notices of appeal. On Appellants' motion, we consolidated the appeals as the legal issues presented are identical.

judgment. *Id.* at 378. A material fact in the context of summary judgment is one from which the right to judgment flows. *Id.*

A defending party . . . may establish a right to summary judgment by demonstrating: (1) facts negating any one of the elements of the non-movant's claim; (2) "that the non-movant, after an adequate period for discovery, has not been able and will not be able to produce sufficient evidence to allow the trier of fact to find the existence of any one" of the elements of the non-movant's claim; or (3) "that there is no genuine dispute as to the existence of the facts necessary to support movant's properly pleaded affirmative defense." *Id.* at 381. Each of these three methods individually "establishes the right to judgment as a matter of law." *Id.*

*Goerlitz v. City of Maryville*, 333 S.W.3d 450, 452-53 (Mo. banc 2011).

## Analysis

Appellants raise one point on appeal assigning error to the circuit court's grant of the City's Motion for Summary Judgment arguing that the City waived its sovereign immunity based on the dangerous condition of public property exception.[4] In its motion for Summary Judgment the City argued that it was entitled to the protections of sovereign immunity pursuant to section 537.600[5]. Sovereign immunity is expressly and absolutely waived for:

Injuries caused by the condition of a public entity's property if the plaintiff establishes [(1)] that the property was in dangerous condition at the time of the injury, [(2)] that the injury directly resulted from the dangerous condition, [(3)] that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, [(4)] and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in

---

[4] Although, the circuit court's judgment did not expressly state its rationale for granting City's motion, we presume the judgment is grounded in the reasoning set forth in City's motion, which argued that the City had not waived its sovereign immunity under these facts. *Stewart v. Liberty Mut. Fire Ins. Co.*, 349 S.W.3d 381, 385 (Mo. App. W.D. 2011).

[5] All statutory citations are to RSMo 2016 as currently updated, unless otherwise noted.

4

sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

Section 537.600.1(2).

City's Motion for Summary Judgment was based on its argument that:

The City's Sovereign Immunity is not waived because as a matter of law the alleged [(1)] injuries did not directly result from any alleged condition of Riverside Road. [(2)] Even if there was a potentially dangerous condition on Riverside Road (an allegation which is denied), the direct cause of the alleged damages is the admitted criminal acts of Skylar Lucas-Cox. Those criminal acts are intervening or superseding causes of plaintiffs' alleged injuries. Thus, those criminal acts preclude a finding of direct cause by any condition of the City's property, and thus there is no waiver of immunity.

Appellants argue the circuit court erred because there is a genuine issue of material fact as to whether Appellants' injuries were the direct result of the defects on Riverside Road, namely its lack of an edge line marking and the existence of the excessive drop-off, and that the actions of Lucas-Cox did not constitute an intervening or superseding cause so as to relieve the City from liability. Therefore, the sole issue on appeal is the application of these facts to the second element of causation, i.e. that the injury directly resulted from the dangerous condition of the roadway.

"The phrase 'directly resulted from' in section 537.600.1(2) is synonymous with 'proximate cause.'" *State ex rel. Mo. Highway & Transp. Comm'n v. Dierker*, 961 S.W.2d 58, 60 (Mo. banc 1998). "The negligence of the [City] need not be the sole cause of the injury, as long as it is one of the efficient causes thereof, without which injury would not have resulted." *Hensley v. Jackson Cty.*, 227 S.W.3d 491, 496 (Mo. banc 2007) (quoting *Oldaker v. Peters*, 869 S.W.2d 94, 100 (Mo. App. W.D. 1993)); *Britton v. City of St. Louis*, 552 S.W.3d 139, 142 (Mo. App. E.D. 2018)

5

The City argues that it has not waived its immunity as a matter of law because the conditions of Riverside Road were not the direct or proximate cause of the accident for two reasons. First, the City argues that the conditions on Riverside Road, namely the absence of an edge line, lack of signage, and the drop-off, did not cause Lucas-Cox to leave the roadway. Second, the City argues that Lucas-Cox's criminal acts were intervening, superseding causes which preclude a finding of direct cause as a matter of law. We disagree.

**A. City's argument that the conditions of the road did not cause Lucas-Cox to leave the roadway**

In arguing that the deficiencies on Riverside Road did not cause Lucas-Cox to leave the roadway, the City misapplies the test to determine whether proximate cause exists. The issue is not whether the deficiencies caused the vehicle to leave the roadway. Rather, the issue is whether the deficiencies are an efficient cause of Appellants' injuries. *Britton*, 552 S.W.3d at 142.

Appellants' expert witness James Loumiet ("Loumiet") testified in his deposition that the lack of edge lines "would make it more difficult for a driver to maintain position on the roadway" "because you're losing that informational guidance for the driver." The lack of edge line made it more difficult for Lucas-Cox to remain on the roadway. Loumiet further testified that the nine-inch edge drop at the side of the roadway was severe,[6] and

---

[6] The Missouri Engineering Policy Guide recommends limiting edge drops to no more than two inches, which is industry standard.

6

the edge drop was a "*contributing factor or contributing cause*" to the accident. Additionally, Loumiet testified that after Lucas-Cox left the roadway:

> [Lucas-Cox] attempted to steer to the left to remount the roadway. That did not happen immediately. At some point the vehicle has enough steer angle to the left that it remounts the roadway. At that point there is a large cornering force . . . because of the steering of the vehicle and the almost instantaneous absence of an edge force from the pavement edge drop, and it creates what's called a slingshot reentry.

In a slingshot reentry, "the vehicle just takes off to the left very quickly," and Appellants contend this slingshot reentry is what forced Lucas-Cox into the southbound lane and was a contributing cause of the resulting collision. Through this testimony, a juror could find that the edge-drop was an "efficient cause" of Appellants' injuries, and because reasonable minds could differ on this issue, a genuine issue of material fact exists. Because the underlying facts are uncertain, it is for a jury to determine whether the lack of edge lines and signage together with the edge-drop was or was not the proximate cause of Appellants' injuries.

**B. City's argument that Lucas-Cox's criminal actions were intervening, superseding causes**

Even though a genuine issue of material fact exists as to whether the lack of edge lines and signage with the existence of the edge-drop were contributing factors to the accident, the City could prevail on its motion if Lucas-Cox's criminal actions constituted intervening and superseding causes which preclude a finding of proximate cause as a matter of law. Lucas-Cox pleaded guilty to manslaughter and assault and admitted that at the time of the accident he was speeding, driving a stolen car, and operating the vehicle under the influence of alcohol and/or drugs. "A 'court may decide the question of proximate cause

7

when the evidence reveals the existence of an intervening cause that ***eclipses the role the [City's] conduct played in the [Appellants'] injur[ies].*"** *Wilmes v. Consumers Oil Co. of Maryville*, 473 S.W.3d 705, 724 (Mo. App. W.D. 2015) (quoting *Stafford v. Drury Inns, Inc.*, 165 S.W.3d 494, 497 (Mo. App. E.D. 2005)). "The act must be a 'new and independent force which so interrupts the chain of events that it becomes the responsible, direct, proximate and immediate cause of the injury.'" *Id.* (quoting *Lewis v. Biegel*, 204 S.W.3d 354, 363 (Mo. App. W.D. 2006)). "However, an 'intervening cause will not preclude liability where it is itself a foreseeable and natural product of the original negligence.'" *Id.* (quoting *Vintila v. Drassen*, 52 S.W.3d 28, 41 (Mo. App. S.D. 2001)).

In *Williams v. City of Independence*, 931 S.W.2d 894, 896 (Mo. App. 1996), we noted that:

> It is well-established that a city has a duty "to exercise ordinary care to maintain its streets in a reasonably safe condition for travel by those using them in the proper manner and with due care." *Lavinge v. City of Jefferson*, 262 S.W.2d 60, 63 (Mo. App. W.D. 1953). Likewise, "a city is liable for injuries sustained by one properly traveling its streets by reason of failure to barricade or warn of an excavation, declivity or other dangerous condition on the border of the travelled portion of a street or so near thereto that a traveler by accidental misstep or inadvertent deviation is injured by it." *Id.*
>
> However, this is not a duty to protect against all possible injuries, just those that are reasonably foreseeable. *Rothwell*, 845 S.W.2d at 44. In cases such as the one at bar, an injury is reasonably foreseeable if a "driver and vehicle normally using the roadway or deviating slightly in the normal use of the roadway will potentially encounter injury from the placement and maintenance of the [condition]." *Id.*

We held that:

> there is no question that the headwall, located eight feet off of the road, was wholly outside of the improved portion of the road and did not interfere with those making normal use of the road. We refuse to find that crossing the

8

center line, travelling through the opposite lane of traffic, and driving across several private lawns before hitting a headwall eight feet off of the roadway qualifies as a 'slight deviation' from the road.

*Id.* at 897.

However, the facts of the instant case show that Lucas-Cox's vehicle did not leave the roadway entirely but only the tires closest to the edge of the road left the roadway, which is a common occurrence; and according to Appellants' expert, the severe drop off at the edge of the roadway caused the driver to overcorrect and cross the center line of the roadway. *See Adkins v. Hontz*, 337 S.W.3d 711 (Mo. App. W.D. 2011) (abrogated on other grounds) (tires went off the pavement and onto the shoulder and upon re-entry crossed center line); *George v. Howard Constr. Co.*, 604 S.W.2d 685, 691 (Mo. App. W.D. 1980) (tires went off the roadway onto the shoulder and upon re-entry "careened at an angle across the center of the traveled portion of the highway"). We conclude that Lucas-Cox's passenger-side wheels leaving the roadway was a "slight deviation" as contemplated by *Lavinge* and *Williams*. Loumiet testified that pavement edge drops have "been a long known problem" and are "serious safety problem[s] because accidents relating to pavement edge drops tend to be severe in nature. . . ." Furthermore, Loumiet stated in his affidavit that:

> I would in my expert opinion expect the driver who senses the drop off of the right tires to immediately react by attempting to remount the northbound lane, and even at 40 mph or less, the large steering angle would result in the loss of control of the vehicle into the southbound lane, which occurred in this accident.

Therefore, we find Appellants introduced sufficient evidence in the summary judgment record to put the issue before the jury whether the City should have foreseen that the lack

9

of edge line markings and the excessive drop off on the edge of the roadway could cause a driver leaving the roadway in a manner similar to Lucas-Cox to overcorrect upon reentry and crash the vehicle resulting in similar injuries.

The City relies on *Dierker*, 961 S.W.2d at 59, 61, where sovereign immunity was not waived when a fifteen-year-old dropped a twenty-pound chunk of concrete from an overpass onto a vehicle traveling below. The driver was killed, and the teenager was charged with involuntary manslaughter. *Id.* at 59. The driver's family brought a wrongful death action against several defendants including the Missouri Highway and Transportation Commission ("MHTC"), alleging the overpass was negligently constructed because the fencing and lighting were inadequate and because MHTC left loose pieces of concrete on the overpass. *Id.* at 59-60. The Court found that the driver's "death was not the direct result of the condition of the overpass, which only 'in some remote way presaged the commission' of the crime." *Id.* at 61 (quoting *Kanagawa v. State by and through Freeman*, 685 S.W.2d 831, 835 (Mo. banc 1985) (overruled on other grounds)). The Court found that the damages therein were "surprising, unexpected, or freakish" and were therefore not the "natural and probable consequences of a defendant's actions." *Id.* The City broadly interprets the holding of *Dierker* to mean that all criminal actions preclude waiver of sovereign immunity as a matter of law, but this interpretation is overly broad and inconsistent with other Missouri case law.

In *Linton v. Missouri Highway and Transportation Commission*, 980 S.W.2d 4, 7, 11 (Mo. App. E.D. 1998), MHTC argued that "the negligence of the driver in driving while intoxicated was a supervening cause," but the court ultimately found that MHTC "was not

10

immune from suit as in *Dierker*." In that case, Sandra Hertlein and two passengers were traveling westbound on an interstate highway and exited the highway via an exit on the left side of the interstate, which was near a reversible lane that ran between normal lanes of traffic. *Id*. at 6. At the end of the exit ramp, the vehicle drove through three flashing red traffic signals, nearly struck an ambulance, and ultimately collided into a concrete railing on the overpass. *Id.* At the time of the accident, Hertlein's blood alcohol content was .188 percent. *Id.* All three individuals died in the accident, and their estates brought a wrongful death suit against MHTC alleging the highway was negligently designed and provided inadequate warning. *Id.* Substantial evidence demonstrated "the left hand exit was dangerous and could catch drivers unaware due to the lack of signing." *Id.* at 9. The court reasoned that "each dangerous condition pertaining to the state, standing alone, would be sufficient to be the direct cause of the injury sustained by plaintiffs or it directly contributed to cause the injuries." *Id*. at 11.

Furthermore, in *Britton*, 552 S.W.3d at 142, the court held that when a driver "negligen[tly] driv[es] his vehicle at a speed in excess of the speed limit and running a red light does not preclude Plaintiff from stating a claim under the dangerous condition exception to sovereign immunity." A widow alleged the city's bus stop lacked: a sufficient area to sit or stand, shelter or other protective structure, and proper warning to pedestrians about passing vehicles. *Id.* at 143. In distinguishing the case from *Dierker*, the court wrote that "it is not unexpected or freakish that a driver might disregard traffic laws and strike a pedestrian[.]" *Id.* at 142.

The City attempts to distinguish the instant case from *Linton* and *Britton* because there was "no intervening criminal act by [a] third party" in either case. However, this assertion is refuted by the facts in both cases. In *Linton*, Hertlein was driving while intoxicated,[7] and in *Britton*, the driver exceeded the speed limit[8] and ran a red light.[9] Similarly, the instant case is distinguishable from *Dierker* because the criminal act of throwing a chunk of concrete from an overpass goes far beyond a "slight deviation" from the overpass's intended purpose.

In the instant case, Lucas-Cox used the road for its intended purpose only slightly deviating from the roadway, and it is not unexpected or freakish that a driver might disregard traffic laws. There was no evidence in the summary judgment record that the fact Lucas-Cox was driving a stolen car contributed in any way to cause the collision and resulting injuries, and there was no evidence in the summary judgment record that Lucas-Cox's impairment from drugs or alcohol contributed to the cause of the collision. Furthermore, as explained previously, there was evidence that a vehicle traveling at a legal speed who left the roadway in a similar fashion could have caused a similar collision and experienced similar injuries. Therefore, the extent of Appellants' injuries are not surprising, unexpected, or freakish. *See Britton*, 552 S.W.3d at 142. The City failed to

---

[7] At the time of the accident, "[a] person commit[ted] the crime of involuntary manslaughter if he . . .[w]hile in an intoxicated condition operates a motor vehicle in this state and, when so operating, acts with criminal negligence to cause the death of any person." Section 565.024.1(2), RSMo 1986. "'Intoxicated condition' mean[t] under the influence of alcohol, a controlled substance, or drug, or any combination thereof." Section 565.002(4), RSMo 1986.

[8] A person driving in excess of the posted speed limit by less than twenty miles per hours is guilty of a class C misdemeanor. Section 304.010, RSMo 2000, as updated through January 21, 2011.

[9] "The driver of any vehicle shall obey the instructions of any official traffic-control device . . . [and] violation of this section is a class C misdemeanor." Section 304.271, RSMo 2000, as updated through January 21, 2011.

establish, as a matter of law on the undisputed facts, Lucas-Cox's actions, criminal or otherwise, constituted an intervening and superseding cause precluding Plaintiff from stating a claim under the dangerous condition exception to sovereign immunity pursuant to *Dierker*.

## Conclusion

There are genuine issues of material fact as to whether the lack of an edge line combined with the nine-inch drop-off caused or contributed to cause the collision and Appellants' injuries, and Lucas-Cox's actions are not sufficient to preclude a finding of proximate cause as a matter of law. Therefore, the circuit court's judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

_____
Gary D. Witt, Judge

All concur

13